# State of Vermont v. George E. Ladabouche

[ 243 A.2d 769 ]

February Term, 1968

Present:   Holden, C.J., Shangraw, Barney, Smith and Keyser, JJ.

Opinion Filed April 2, 1968

Motion for Reargument Denied June 4, 1968

*Patrick J. Leahy,* State's Attorney, and *Alan W. Cheever,* Assistant Attorney General, for the State.

*Peter Forbes Langrock, Esq.,* and *Mark L. Sperry, Esq.,* for Defendant.

**Smith, J.** The respondent, George E. Ladabouche, has taken his appeal here from the judgment of the Chittenden County Court, following a jury trial with a verdict of guilty, on an information charging the respondent with stealing property from the person of another. 13 V.S.A. §2503.

Respondent first contends that the lower court was in error in not granting his motion for a verdict directed in his favor made at the close of all the evidence in the trial below.

"In passing on this motion the trial court was required to consider the evidence in its aspect most favorable to the State. The test is whether the State introduced evidence fairly and reasonably tending to show the respondent's guilt, or in other words, whether the jury on the evidence was justified in finding the respondent guilty beyond a reasonable doubt." *State* v. *Ciocca,* 125 Vt. 64. 67, 73, 209 A.2d 507, with citations there given omitted.

The respondent was accused of robbing one Napoleon Barber of more than $200 on the night of August 22, 1966. Viewing the evidence in the light most favorable to the State it appears that on the night in question the 79-year old Barber, carrying his wallet with $235.00 therein, went from Burlington to Winooski.

His claimed intention was to pay a bill that he owed in Winooski. However, upon his arrival in the latter city, he decided to tarry for a while in several bars before completing his mission. During this interlude, Mr. Barber consumed both whiskey and beer in such amounts that, to use his own words, "My mind went blank. I didn't know what I done or where I went." When Mr. Barber once more regained some understanding of time and place he found himself in front of a pool hall, but without his wallet and its contents.

Covering the time gap in Mr. Barber's own testimony was the testimony of three girls, Joyce Gorton, Mary Corwin and Nancy Ladabouche, witnesses produced by the State. The last named of the girls is a sister of the respondent.

The testimony of the girls was that they encountered the rather unsteady Mr. Barber on a street in Winooski, that he talked with them for some period of time, gave them a dollar to buy some soft drinks, and followed them to the entrance to a stairway that went up to the Lada-

bouche apartment. At this time and place all of the girls testified that George Ladabouche, the respondent, suddenly appeared behind Mr. Barber and wrestled him to the floor.

Joyce Gorton and Mary Corwin, at this juncture, fled up the stairs, although they could hear exclamations uttered by Barber indicating that a struggle was in progress. Nancy Ladabouche, however, remained at the scene until she was directed by her brother to "go get Glen Richards."

Richards, also a State witness, testified that he was playing cards in the apartment of Lyle Church when Nancy appeared and gave him the message from her brother. At the entrance to the Ladabouche stairway he found Barber held fast on the floor by the respondent in what Richards described as a "full nelson." Directed by the respondent to "grab his wallet" Richards followed the direction and returned to the Church apartment. A little later the respondent appeared there and he and Richards split the contents of the wallet, with each giving Nancy a ten-dollar bill, presumably as a reward for her aid in the matter.

Nancy Ladabouche corroborated the testimony of Richards on the division of the spoils. Another State witness, Robert Ladabouche, a brother of the respondent testified that the respondent admitted to him the robbery of Barber.

The respondent's defense was an alibi. He testified that during the entire time that the robbery was taking place that he was playing pool in Al's Pool Room with his uncle, Lyle Church. His alibi claim was supported only by the testimony of Harry Barton, pool room manager. Barton, when asked if the respondent was in the pool room at all times relevant to the alleged crime, stated "As far as I know, I didn't see them go out."

The further testimony of the respondent was that the first he knew of the whole matter was when Mr. Barber appeared at the pool room and announced that he had been "rolled" by some girls, one of which the respondent suspected to be his sister. Respondent denied that he had stolen any money from Mr. Barber and asserted his belief that the witnesses for the State were lying about the matter.

■ Viewed in the light most favorable to the State, the evidence just related would justify a jury in finding the respondent guilty beyond a reasonable doubt, which is the test. *State* v. *Perras,* 117 Vt. 163, 167, 86 A.2d 544. The lower court was correct in denying the motion of the respondent.

We now consider the various exceptions of the respondent to the admission of evidence in the trial below which admission respondent claims to have been both erroneous and prejudicial. In this Court objections are briefed to the admission of testimony of Mr. Barber that upon discovering the loss of his wallet he noticed two young men following him, as well as to certain testimony given by Mary Corwin in which she stated that she believed Nancy Ladabouche was telling the truth when she implicated her brother in the offense. Whatever may be the merits of the objections briefed here the record disclosed that respondent made no objection to the admission of this evidence at the trial.

An objection to evidence must be made at the time it is offered. Where evidence comes in without objection, all right of objection is waived. No question may be brought to this Court except upon which it is made to appear that the trial court has had fair opportunity to pass judgment. *L'Ecuyer* v. *State Highway Board,* 124 Vt. 462, 465, 207 A.2d 260; *Merrill* v. *Reed,* 123 Vt. 248, 185 A.2d 737.

Some of the testimony given by Mary Corwin was concerned with the remarks made by the respondent to his sister Nancy, relative to a statement given by Nancy to the authorities on the alleged robbery, at the county jail. Her testimony was that respondent asked Nancy, "What did you sign that statement for." On re-direct examination, Miss Corwin was asked by the State "And do you know whether that statement indicated that George had been involved in the incident you have described here." Over objection by respondent that this question called for an opinion from the witness she was permitted to answer.

But any merit attaching to the objection was waived when the respondent asked Miss Corwin almost the identical question and received the same answer. *Grygiel* v. *Grygiel,* 68 R.I. 155, 26 A.2d 743, 744; *Jaqueth* v. *Town of Guilford School Dist.,* 123 Vt. 382, 388, 189 A.2d 558.

Respondent also objects to the refusal of the lower court to allow him to inquire from the witness, Glen Richards, whether Richard's attorney had made some deal with the State's Attorney promising him immunity if he became a witness for the State.

After the objection to the questioning had been sustained the State's Attorney then stated, "Your Honor, if it will help Mr. Piche in any

way, the State is aware of the fact that immunity of his testimony is given simply by calling him as a material witness in this case. The State calls him with a cognizance that immunity is given for everything but perjury."

Respondent's objection is that he should have been allowed to question Richards relative to the "deal" in order to affect Richards' credibility with the jury. But while the statement of the State's Attorney was incorrect, as a matter of law, the jury had been advised that Richards had been granted immunity in exchange for his testimony as a fact for their consideration in weighing the evidence given by Richards. They could take into consideration the prospect of personal gain to Richards, and that the promise of reward might affect his credibility. *State* v. *Crepeault,* 126 Vt. 338, 340, 229 A.2d 245. Any prejudice on the part of Richards that could have been shown by allowing respondent to cross-examine him on a "deal" with the State was placed in the case by the statement of the State's Attorney. The prejudice that might be created was to the State, and not to the respondent. The error, if any, was harmless.

The next contention of the respondent here is that he was prejudiced by his cross-examination by the State as to his prior criminal record and conduct. He was first asked by the State, without objection made, on whether he had a previous felony record. Respondent answered that he had been convicted on a charge of breaking and entering for which he had received a sentence of one to three years in State's Prison.

The State then inquired if he was on parole as a result of such conviction, and upon respondent's affirmative answer to the question, further inquiry was made of him as to the conditions of his parole, and as to the possible effect of any parole violations. Not until all the questions had been asked of him relating to his parole, and he had answered the same, was an objection made to the line of questioning.

Later, in the same cross-examination, the respondent was asked if one of the conditions of his parole was to abstain from drinking intoxicants. Upon his admission of this condition, he was then asked if he had done any drinking while on parole and he admitted having consumed some beer. Again, there was no objection made to this line of questioning until the questions had been propounded and answered by the respondent.

■ It may be that counsel for the respondent may have felt that there was some tactical advantage to be gained by allowing the respondent to answer the questions relative to his parole and conduct, and taking no exceptions until the questions and answers were on the record. If so, it was at his own peril, for when no objections are made, or exceptions taken, until the questions are replied to with responsive answers, and it not appearing that objections could not have been seasonably interposed, later exceptions are unavailing. *State* v. *Conley,* 107 Vt. 72, 75, 176 A. 300.

■ If there had been proper and timely objections to the questions regarding the parole of the respondent, and his possible violations of them, an admission of such questions would have been in error. The questions could not have been asked to impeach the character of the respondent, because only the respondent could have introduced that issue, and he had not done so. Nor was such evidence admissible under 12 V.S.A. §1608 as affecting the credibility of the witness. But in the absence of timely objections to the admission of the evidence now claimed to have been improperly admitted, and in the absence of an affirmative showing by the respondent that he has been prejudiced by the alleged erroneous admission of the evidence, we find no reversible error. *State* v. *Williams,* 94 Vt. 423, 431, 111 A. 701.

Respondent last claim of error here is that the lower court incorrectly instructed the jury on the law of alibi. No exception was taken by the respondent to the charge of the court at the time it was given. However, since this is a criminal case, we have departed from the general practice to examine the instructions upon which the respondent claims error.

The trial court charged the jury that: "If the evidence offered to establish an alibi fails to show the respondent in the place claimed by him at such a time that he could not have been at the place of the crime at the time of its commission, the alibi fails. In other words, if the accused might not have been at the place he claimed at the time he claims, and yet might have been at the place of the crime at the time it was committed, then there will be no alibi. You will bear in mind that the State must establish the guilt of the respondent beyond a reasonable doubt, so that if the evidence in support of the alibi, taken in connection with the other evidence in the case, raises in your minds a reaonable doubt as to the respondent's guilt, then he is entitled to an acquittal, but if you are satisfied beyond a reasonable doubt that

the alibi is a fabricated defense, that is, that the evidence introduced in support of it is false and known to be false by the respondent, the attempt to establish such alibi is evidence, but not conclusive evidence of the respondent's guilt. In other words, it is evidence to be considered with all other evidence in the case bearing upon that question, for of course the respondent knows where he was and when he was there and whether this defense was fabricated or not. If the alibi was made out, then of course, it shows the respondent was not and could not have been at the place when the offense was committed. If the alibi fails, it is evidence of guilt against the respondent, for no one knows better than the respondent where he was at the time the offense was committed. A more accurate statement of the rule may be that if it is found the claimed alibi is false or fictitious, the attempt to establish it is one evidence of guilt."

This part of the charge, as well as the court's definition of the defense, which precedes it, was correct and proper. *State* v. *Powers,* 72 Vt. 168, 174, 47 A. 830. No error appears.

*Judgment affirmed.*