## State of Vermont v. John Yorkey, Douglas Willey and David Murray; Town of Danville, Intervenor

[657 A.2d 1079]

No. 93-537

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed February 24, 1995

*Jeffrey L. Amestoy*, Attorney General, and *Robert W. Gagnon*, Senior Assistant Attorney General, Montpelier, for Plaintiff-Appellee.

*Jan Rickless Paul* of *Paul and Paul*, St. Johnsbury, for Intervenor-Appellant.

*Deborah L. Markowitz*, Montpelier, for Amicus Curiae Vermont League of Cities and Towns.

**Gibson, J.** The Town of Danville appeals from a district court decision that the Town lacked authority to adopt an ordinance regulating speeds on U.S. Route 2, a state highway located within its borders. We affirm.

Defendants were given tickets by a deputy sheriff for speeding on U.S. Route 2 in Danville, pursuant to a local ordinance setting the town speed limit equal to the preexisting state speed limit. After the traffic bureau ruled that 23 V.S.A. § 1007(a) did not permit the Town to enact the ordinance, it amended the citations to reflect violations of the state speed limit under 23 V.S.A. § 1003. The Town appealed to the district court, which affirmed the bureau's decision, concluding that Danville lacked statutory authority to enact any ordinance governing speed on state highways. The present appeal followed.

The Danville ordinance was adopted in 1990, claiming authority under 23 V.S.A. §§ 1007 and 1008, 24 V.S.A. §§ 1971 and 2291(1), (4) and (5). At issue on appeal are 23 V.S.A. § 1007, which provides for increases and decreases in speed limits by municipalities under

certain conditions, and 24 V.S.A. § 2291(4), a general grant of authority to municipalities which provides that "[f]or the purpose of promoting the public health, safety, welfare and convenience," a town or city shall have the power to regulate the speed of vehicles subject to what is now 23 V.S.A. § 1081.

23 V.S.A. § 1081(b) establishes a maximum speed limit on all highways of fifty miles per hour. Section 1081(c) provides that "[t]he maximum speed limits set forth in this section may be altered in accordance with sections 1003, 1004, 1007 and 1010 of this title."

When Danville's ordinance was adopted in 1990, 23 V.S.A. § 1007 provided, in pertinent part, as follows:

(a) Whenever the legislative body of a *municipality* determines, on the basis of an engineering and traffic investigation, that a maximum speed permitted under this chapter is greater or less than is reasonable and safe under conditions found to exist upon all or a part of any city, *town* or village *street or highway* within its jurisdiction, it may determine and declare a reasonable and safe maximum limit any provision of any municipal charter or ordinance to the contrary notwithstanding which

(1) increases the limit, but not to more than fifty miles per hour; or

(2) decreases the limit, but not to less than twenty-five miles per hour.

(b) Whenever the legislative body of a *city* determines, on the basis of an engineering and traffic investigation, that a maximum speed permitted under this chapter is greater or less than is reasonable and safe under conditions found to exist upon all or a part of any *state highway*, other than a limited access highway, within its jurisdiction, it may determine and declare a reasonable and safe maximum limit any provision of any municipal charter or ordinance to the contrary notwithstanding which:

(1) increases the limit, but not to more than fifty miles per hour; or

(2) decreases the limit, but not to less than twenty-five miles per hour.

(Emphasis added.)

█ As we have often pointed out, a municipality has only those powers and functions that are specifically authorized by the Legisla-

ture, and such additional functions as may be incident, subordinate or necessary to the exercise thereof. *Handy v. City of Rutland*, 156 Vt. 397, 400, 598 A.2d 114, 116 (1990); *Hinesburg Sand & Gravel Co. v. Town of Hinesburg*, 135 Vt. 484, 485-86, 380 A.2d 64, 66 (1977). Further, there is a presumption that the Legislature does not intend to enact meaningless legislation, *State v. Baldwin*, 140 Vt. 501, 511, 438 A.2d 1135, 1140 (1981); thus, when we construe a statute, we must do so in a manner that will not render it ineffective or meaningless. *Id.*

■■ Section 1007 clearly and unambiguously precludes enforcement of the ordinance before us. Section 1007(a), which took effect in 1973, grants authority to the "legislative body of a municipality" to set the speed limit on a "town . . . street or highway." Section 1007(b), which was adopted the following year, applies solely to the "legislative body of a city" and grants to cities, only, the authority to set speed limits on "any state highway, other than a limited access highway."* If the Legislature had intended that a town set speed limits on state highways within its borders under § 1007(a), then § 1007(b) would have been unnecessary. U.S. Route 2 is a state highway, not a "town . . . street or highway." There is no question but that § 1007 does not permit the Town of Danville to regulate the speed limit on Route 2. Cf. *State v. Blaine*, 133 Vt. 345, 353, 341 A.2d 16, 21 (1975) (construing 23 V.S.A. § 1007 prior to enactment of subsection (b), Court held that purported existence of local speeding ordinance was negated by § 1007, under which local legislative bodies were not empowered to set speed limits on state highways).

■ Nevertheless, the Town argues that distinguishing between town and city within § 1007 is not based on any relevant difference and that the Legislature could have had no rational reason for granting cities the power to establish speed limits on state highways while denying that power to towns. If the Town means to imply that the Legislature intended no distinction at all between towns and cities, the argument fails the plain meaning test. Not to distinguish between a town and a city would run contrary to this Court's instruction that every part of a statute must be considered and, if possible, effect given to every word, clause and sentence. *Trapeni v.*

---

* "'State highways' are those highways maintained exclusively by the agency of transportation." 19 V.S.A. § 1(18). "'Town highways' are those highways exclusively maintained by the towns and those highways maintained by the towns except for scheduled surface maintenance performed by the agency . . . ." *Id.* § 1(21).

*Department of Employment Sec.*, 142 Vt. 317, 323, 455 A.2d 329, 332 (1982).

Whether the distinction between town and city makes sense is not the concern of the courts, so long as the statute has a rational relation to its purpose. Cf. *Sienkiewycz v. Dressell*, 151 Vt. 421, 424, 561 A.2d 415, 417 (1989) (distinction between corporate and noncorporate employees within workers' compensation law is valid classification for equal protection purposes). A city is a municipal corporation that, in most instances, is of the largest and highest class. Black's Law Dictionary 222 (5th ed. 1979). The Legislature is free to distinguish between towns and cities in § 1007, and we will construe the provision to reflect that distinction.

■ Further, because the Town of Danville is not a city, see 24 V.S.A. § 4 (identifying Danville as a town in Caledonia County), any analysis of § 1007(b) seems at first blush entirely academic. The Town contends, however, that it should be deemed a city for purposes of § 1007 because the Vermont statutes do not define "city," rendering the word ambiguous. The Town adds that by giving the word "town" its plain, ordinary meaning, Danville becomes a "city" within the meaning of the statute. The argument is unconvincing. The plain, ordinary meaning of "town" is that it is an entity that was legislatively created as a town. The distinction between a town and a city is reasonably clear, both historically and legally. Even if there are contexts in which the distinction is not relevant or important — as where all municipalities are treated together — here, the Legislature has adopted a statute in which the distinction is clearly expressed. The Town of Danville is not a city, either for purposes of § 1007 or for any other purpose that the Court can discern.

The Town next contends that it has independent authority to enact the ordinance under 24 V.S.A. § 2291(4). Its theory is that § 2291(4) authorizes it "to regulate the speed of vehicles," subject only to the constraints of § 1007, and because § 1007 deals only with *increases* or *decreases* in speed limits, it does not bar an ordinance that leaves the state-prescribed limit in place.

■ The clear answer is that the Danville ordinance does not "regulate the speed of vehicles" in any meaningful sense. It is at most a post hoc adoption of the existing speed limit under state law, which the ordinance does not, and cannot, vary. It is the State that has set the speed for Route 2 in the Town, and the sole effect of the ordinance is to divert to the Town fines that would otherwise flow to the State —

in short, it is a revenue-raising measure. As a revenue-raising measure, the ordinance is neither expressly nor impliedly authorized by the Legislature. See *Handy v. City of Rutland*, 156 Vt. at 400, 598 A.2d at 116 (municipality has only those powers specifically authorized by Legislature).

In its amicus brief in support of the Town's position, the Vermont League of Cities and Towns points to the financial burden incurred by municipalities in enforcing speed limits on state highways within their borders, and argues that municipal authority to enact concurrent speed limits on state highways "makes sense." But if Danville may collect such revenues, any town having a state highway within its boundaries may do likewise. Who receives the proceeds from the enforcement of speeding limits on state highways is an important issue within the overall state revenue-raising scheme — a quintessentially legislative concern. If the Town wishes to obtain such funds, it should petition for appropriate legislation.

*Affirmed.*

