STATE

v.

Daniel S. SHEPARD.

No. 98–133–C.A.

Supreme Court of Rhode Island.

March 12, 1999.

Aaron L. Weisman, Providence, for plaintiff.

Paula Rosin, Providence, James M. Weisfield, for defendant.

Before WEISBERGER, C.J., and LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINON

PER CURIAM.

Does the crime of attempted larceny from the person require an attempted taking of an object that actually was on or attached to the victims physical person? Or is it enough that, when the perpetrator attempted to take the object in question, it was within the victims immediate presence and control, even though it was not touching or attached physically to the victim's person? A Superior Court trial justice opted for the latter interpretation, and, for the reasons explained below, we concur that this was the proper construction.

### Facts and Travel

The defendant, Daniel S. Shepard, appeals from a Superior Court judgment of conviction for attempted larceny from the person. The Superior Court sentenced defendant to ten years imprisonment, three years to serve, with seven years probation to commence upon his release from prison. The court also adjudged defendant to be a violator of a previously suspended sentence and ordered him to serve three years of that sentence, consecutive to the sentence for the attempted-larceny conviction. The present appeal concerns only this conviction. We ordered the parties to show cause why we should not decide summarily the issues raised in this appeal. After reviewing the parties memoranda and listening to their oral arguments, we conclude that neither the state nor defendant has shown cause why we should not proceed to decide this appeal without further briefing and argument.

The victim in this case was driving a minivan owned by her employer on February 7, 1995. After making a delivery in Providence, she began driving back to her place of employment. As she approached a stop sign, she looked both ways and noticed a car approaching from the left. She determined that she had sufficient time to proceed through the intersection and began to do so. The mini-van was approximately three-quarters of the way through the intersection, however, when another vehicle struck it on the rear drivers quarter. The impact pushed the mini-van into a building, pinning the drivers side of the vehicle against the building and rendering it impossible for the victim to open her door. In addition, the mini-vans gas pedal became stuck on the floor mat, causing the engine to begin revving while the

mini-van remained wedged against the building.

Meanwhile, the driver of the other vehicle, whom the victim later identified as defendant, got out of his car. As he approached her vehicle, the victim initially asked him for assistance. After defendant entered the mini-van through the passenger door, however, he demanded that the victim pay him for the damage that his vehicle sustained in the accident. He then grabbed her wallet, which the victim had placed on the passenger seat, and began to rifle through it. When he found it was empty, he put it back down on the seat. By this time, the victim had become so agitated that she shifted her vehicle into reverse. As she did so, the mini-van spun around and defendant nearly fell out. Even though this turnabout convinced him to egress from the mini-van, defendant still continued to insist that the victim had to compensate him for his damages. Suddenly, while exiting, he grabbed her plug-in car phone from the front portion of the vehicle, but the victim managed to get hold of the cord. A brief struggle ensued, which ended when defendant dropped the phone, returned to his vehicle, and left the scene.

The state originally charged defendant with assault with intent to commit robbery. Following the presentation of the state's case, defendant moved for a judgment of acquittal on this charge. The trial justice determined that there was no evidence of an assault with intent to rob and granted the motion. He then reduced the charge against defendant to the lesser included offense of attempted larceny from the person in violation of G.L.1956 § 11–41–7.[1] The defendant moved for dismissal of the larceny charge, arguing that the evidence failed to show that defendant attempted to take anything from the person of the victim. He further claimed that, in the absence of proof that he had attempted to remove something that the vic-

tim held or that was on or attached physically to her person, the charge of larceny from the person could not stand. The defendant also requested that the trial justice instruct the jury on the lesser included offense of attempted larceny in violation of § 11–41–6.[2]

The trial justice denied defendants motion. He concluded that the evidence showed that the property was in the victim's immediate presence when defendant attempted to take it, and that this close proximity of the object to the victim was sufficient to support a conviction for attempted larceny from the person. He further determined that the evidence pertaining to the struggle over the car phone would itself be sufficient to support this crime. The trial justice instructed the jury that it was not a defense to the crime to assert that the property in question was not literally in the hands of the victim or directly on her person when the attempt to take it from her occurred. Instead, he charged the jury: "If the item was within her immediate grasp or reach such that she could otherwise retain immediate control over it, its theft would constitute larceny from the person [of the victim]." The trial justice did not instruct the jury on the charge of attempted larceny under § 11–41–6.

On appeal, defendant argues that the trial justice erred in denying the motion for judgment of acquittal and in refusing to instruct the jury on attempted larceny. The defendant contends that we should strictly construe the phrase "from the person," as it is used in § 11–41–7, to require an actual trespass upon the physical person of the victim in order for a jury to find defendant guilty. In response, the state asserts that the taking of property "from the person" includes a taking from the immediate presence of the person. Other jurisdictions are split as to their interpretation of similar phrasing, and we have not yet had an occasion to construe this statutory language.

1. General Laws 1956 § 11–41–7 provides as follows:

"Every person who shall steal or attempt to steal from the person of another, any money, goods, chattels, or other article enumerated in § 11–41–1, shall be imprisoned not less than one year nor more than ten (10) years."

2. Section 11–41–6 states:

"Whoever attempts to commit larceny by doing any act toward the commission of the offense, but fails in its perpetration, shall, unless otherwise provided, suffer the same punishment which might have been inflicted if the offense attempted had been committed."

Before reviewing the authorities addressing this issue, we must note that the trial justice determined that even if the statute required an actual trespass upon the person of another, that factor was satisfied in this case because the victim testified that she attempted to take the car phone out of defendants hands by grabbing hold of the phone cord and that thereafter, a brief struggle took place before defendant finally ceased his efforts to pry the car phone from the victims grasp. The defendant argues that since his hands were on the car phone first, the evidence that the victim attempted to wrest it away from him does not convert the attempted theft into one that is "from the person." However, had defendant been successful in this struggle and pried the car phone out of the victims grasp, such circumstances would have satisfied the elements of the crime of larceny from the person. The mere fact that defendant seized the car phone before the victim placed her hands on it is immaterial: defendant still had no right to take the car phone out of the victims hands, and the victim had every right to put her hands there and to hang onto it despite defendant having grabbed it first. Accordingly, this evidence alone would be sufficient for us to affirm the denial of the motion for judgment of acquittal. But even if there had been no evidence of any struggle involving the car phone, we still are of the opinion that we should interpret the phrase "from the person" to include takings of objects from or within the victim's immediate presence if those objects are in the victims' constructive possession or control at the time of the attempted taking.

The defendant contends that his argument finds support in the common law. Some courts have recognized that the crime of larceny from the person arose as a crime distinct from simple larceny via the Statute of 8 Elizabeth in the 16th century. These courts note that the framers of the statute intended this discrete crime to cover the act of pickpocketing and "required 'an actual taking from the person.'" *Terral v. State,* 84 Nev. 412, 442 P.2d 465, 465–66 (1968) (quoting *State v. Chambers,* 22 W.Va. 779 (1883)).

A taking of property from the immediate presence or constructive possession of the person was insufficient to commit larceny. *See Terral,* 442 P.2d at 466; see also *People v. McElroy,* 116 Cal. 583, 48 P. 718, 719 (1897); *Wilder v. State,* 30 Ala.App. 107, 1 So.2d 317, 318 (1941); *People v. DeVaughn,* 63 Cal.App. 513, 218 P. 1020, 1021 (1923).

Other courts, however, have given the phrase "from the person" the broader interpretation advocated by the state and also have found support for their position in the common law. In *State v. Buckom,* 328 N.C. 313, 401 S.E.2d 362 (1991), the court relied upon the common-law definitions of larceny and robbery to hold that "[p]roperty is stolen 'from the person,' if it was under the protection of the person at the time." *Id.* at 365 (quoting R. Perkins & R. Boyce, *Criminal Law* 342 (3d ed.1982)). Under this view, it is unnecessary for the property to be attached physically to the person at the time of the theft. The court further reasoned that the difference between larceny from the person and robbery, at common law, is that robbery "is 'an open and violent [larceny],'" while stealing from the person is typically "a concealed, clandestine activity." *Id.* (quoting H. Broom, *Commentaries on the Common Law* 976 (1856)). Applying common-law principles, the court concluded that "[p]roperty is stolen 'from the person,' if it was under the protection of the person * * * [and] [p]roperty may be under the protection of the person although not actually attached to him." *Id.* (quoting R. Perkins & R. Boyce, *supra* ).

Courts that approach this issue from the perspective of statutory interpretation also have reached conflicting results. Because no statute defines robbery in Rhode Island, the common-law definition is applicable. In *State v. Domanski,* 57 R.I. 500, 190 A. 854 (1937), this Court defined robbery as the "felonious taking of money or goods of any value from the person of another, *or in his presence,* against his will, by violence, or putting him in fear." *Id.* at 501, 190 A. at 855 (quoting 2 East P.C. 707; 4 Black. Comm. 243; Hale P.C. 532). (Emphasis added.)[3] Section 11–41–7, which sets forth the

---

**3.** It is interesting to note that the use of the term *in his presence* in the definition of robbery is not universal in our case law. *See State v. Reposa,*

99 R.I. 147, 149, 206 A.2d 213, 215 (1965) (defining robbery as the felonious and forcible taking from the person of another of goods or money to

definition of the crime of larceny from the person, does not include the phrase "in his presence." The defendant argues that the absence of this phrase signifies the Legislature's intent to create an offense that required an actual physical trespass upon the person of another in order for a jury to find him guilty. This argument finds support in *State v. Lucero*, 28 Utah 2d 61, 498 P.2d 350 (1972), in which the court reasoned as follows:

> "If *immediate presence* means the same as *from the person* in the grand larceny statute, then one would wonder why the same would not apply to robbery. Why would the legislature have included the phrase or immediate presence in the definition of robbery if the words from his person also meant immediate presence?" *Id.* at 351.

Another court, faced with similar statutory language, reached a different conclusion in *In the Matter of the Welfare of D.D.S.*, 396 N.W.2d 831 (Minn.1986). In that case, the court determined that the Legislature's failure to use the phrase "in his presence" in the larceny statute, although it used such language in the robbery statute, did not mean that the Legislature intended to exclude theft of property under the immediate control of the victim from the offense of theft from the person. The court noted that, at common law, property stolen "from the person" included property that was in the presence of the person when it was stolen, and therefore, no need existed to add this phrase to the statute. See id. at 832–33.

While some courts have concluded that an actual trespass upon the physical person of another is a necessary element of the crime of larceny from the person, *see State v. Crowe*, 174 Conn. 129, 384 A.2d 340 (1977); *Wilder v. State*, 30 Ala.App. 107, 1 So.2d 317 (1941), another view holds that a constructive trespass is sufficient to constitute a larceny from the person, *see Garland v. Commonwealth*, 18 Va.App. 706, 446 S.E.2d 628 (1994). In *Garland*, the court upheld the defendants conviction of larceny from the person. The evidence showed that the defendant, while standing near a cashier at a restaurant, reached over and took money out of the cash drawer after the cashier had opened the register. While he did not come in contact with the cashier, his hand was within inches of her as he grabbed a handful of money. The court found that, at the time of the theft, the money was in the immediate custody and control of the cashier. Accordingly, it ruled that the defendant's conduct constituted a constructive trespass upon her person. See id. at 629–30. Moreover, in *State v. Kobylasz*, 242 Iowa 1161, 47 N.W.2d 167 (1951), using this broader interpretation, the court concluded that the defendant committed larceny "from the person" even though the purse from which he took the victim's wallet was located on the car seat in between himself and the victim. The court reasoned:

> "Here the property was in the possession and immediate presence—in the immediate charge and custody—of the prosecutrix. We think the taking, under the testimony, was away from, though not actually off, her person. She was at the moment carrying it on the automobile seat beside her. The jury could find it was stolen from her person." *Id.* at 170.

Courts adopting the broader interpretation of the statutory term "from the person" frequently cite the potential for violence that inheres in a theft of property taken when it is in the *immediate presence* of the victim. In *Garland*, the court pointed out that the victim was in fear at the time of the theft and that the defendants conduct was "of an assaultive nature." 446 S.E.2d at 630. In *In the Matter of the Welfare of D.D.S.*, the court noted that the special potential for physical violence or personal alarm associated with a theft of property that is attached to or in the hands of a victim also exists when property is taken from the immediate presence or control of the victim. 396 N.W.2d at 833.

In this case, the victim testified that she was "very afraid" at the time of the incident. The defendant entered her vehicle without her permission, when she still was dazed from the accident and unable to retreat or withdraw, and he demanded that she compensate him immediately after he had just

any value by violence or putting him in fear)     (quoting 4 Black. Comm. 241).

crashed his car into her vehicle. His conduct in attempting to wrench the car phone out of her grasp was "of an assaultive nature." Moreover, the objects the defendant attempted to take from the victim, her wallet and the car phone, were within her reach and thus in her immediate presence and protection within the vehicle. Given these circumstances, we are persuaded that the broader interpretation of the crime of larceny from the person is more consonant with the statute's evident purpose—namely, to protect the dignity and sanctity of each person from a theft of property within that person's custody and control while that person is present physically. Thus, we conclude that the evidence supports the defendant's conviction of the crime of attempted larceny from the person. As a result, the trial justice did not need to charge the jury on the lesser included offense of simple larceny.

In light of the foregoing, we deny and dismiss the defendant's appeal and affirm the Superior Court's judgment of conviction.