## State of Vermont v. Robert J. Brennan

[775 A.2d 919]

No. 00-050

Present: **Amestoy, C.J., Dooley, Morse, Johnson and Skoglund, JJ.**

Opinion Filed June 1, 2001

*William D. Wright,* Bennington County State's Attorney, and *Brian K. Marthage,* Deputy State's Attorney, Bennington, for Plaintiff-Appellee.

*Robert Appel,* Defender General, *Anna Saxman,* Appellate Attorney, and *Seth Carey,* Law Clerk (On the Brief), Montpelier, for Defendant-Appellant.

**Johnson, J.** Defendant Robert Brennan appeals from a conditional guilty plea to the charge of 13 V.S.A. § 2503, larceny from the person. The district court granted the State's motion to amend the initial misdemeanor charge of 13 V.S.A. § 2502, petit larceny to a felony charge of larceny from the person. Defendant argues that larceny from the person requires that the property stolen must literally be attached to or touching the owner when stolen in order to satisfy the statute. We disagree that the items must be directly touching the victim but find that the evidence does not support the heightened charge. We reverse.

On September 9, 1999 at approximately 10:50 a.m., Priscilla Nicholson, accompanied by a friend, picked up defendant at the on-ramp to Route 7 in Manchester, Vermont. Defendant sat in the back seat of the vehicle near some of Nicholson's personal belongings, including her purse. When Nicholson reached Bennington, Vermont, she dropped defendant off and continued to her destination. Soon after, she realized her purse had been opened and eighty dollars had been stolen. She contacted the police, giving a physical description of defendant. She provided other information defendant had volunteered during the ride, such as his name, address, and place of work. Later that afternoon, defendant was taken into custody for questioning. He admitted riding in Nicholson's car and was cited for petit larceny, defined as the theft of goods or property worth less than $500.00. 13 V.S.A. § 2502.

On October 6, 1999, the state's attorney moved to amend the information to a violation of 13 V.S.A. § 2503, larceny from the person, a felony. Larceny from the person is defined as stealing or attempting to steal "from the person and custody of another." 13 V.S.A. § 2503. Defendant moved to dismiss the amended information, but the court granted the amendment to the information on October 29, 1999. The court held that the statute was intended to give added protection

against "thefts that presented a high risk of actual confrontation" and to "cover thefts from the immediate presence and control of an owner." The court relied on another district court case, *State v. Shatney*, 890-6-98WmCr, in which, under similar circumstances, that court held larceny from the person did not require "a taking from the very person or body of the victim."

Defendant was sentenced to one to three years imprisonment, all suspended and eighty dollars restitution. He entered the conditional plea agreement, retaining his right to appeal the court's decision and order. His appeal presents a case of first impression in Vermont.

At issue is the meaning of "from the person and custody of another." 13 V.S.A. § 2503. Defendant argues on appeal that § 2503 requires that the property taken must be attached to or on the owner's body at the time of theft. Defendant reasons that since Nicholson's purse was in the back seat of the vehicle and not directly touching her, the property was not literally taken "from the person." Thus, defendant argues, the physical contact requirement of the statute was not met. Defendant supports his claim by contrasting § 2503 with similar sections of the Vermont criminal statutes, such as 13 V.S.A. § 608, assault and robbery. Unlike § 2503, 13 V.S.A. § 608 specifically punishes assaultive theft that occurs either "from his person or in his presence." Had the legislature intended larceny from the person to apply to property in the immediate presence of the person, defendant contends it would have expressly used the language found in § 608; because the language "in his presence" is absent from § 2503, the crime should not be interpreted to include it. Defendant also argues that his interpretation of § 2503 is consistent with common law because the statute was originally enacted to punish pickpockets, who necessarily have direct contact with the property owner's person to accomplish the theft. Finally, defendant claims that if § 2503 is read broadly, i.e., to include the concept of "in his presence," then the trial court has created a new crime, namely "larceny from the person or presence of another," which violates defendant's due process rights.

In response, the State contends that the phrase "from the person" has been used at common law to describe the theft of objects from the immediate presence of the owner as well as literally attached to the owner. The State claims that because Nicholson kept her purse sufficiently close to her body and under her immediate control, the statute is satisfied; therefore, the charge of larceny from the person is appropriate in spite of the fact that the purse was located in the rear seat of her car. The State also argues that the history of the statute

demonstrates a legislative intent to construe § 2503 broadly, to include "in his presence." The State claims that evidence of this intent is based on the addition of the phrase "and custody of another" to the statute in 1880, and the additional language emphasizes that the offense is comprised of two elements: 1) the taking of property from an individual's person; and 2) the taking of property from an individual's custody. Thus, the State concludes that if the statute is interpreted narrowly, i.e., to exclude the concept of "in his presence," then the phrase "and custody" will be rendered meaningless, which is contrary to the intent of the legislature.

In construing a statute, "our principal goal is to effectuate the intent of the Legislature." *Tarrant v. Department of Taxes*, 169 Vt. 189, 197, 733 A.2d 733, 739 (1999). In determining legislative intent, we begin with the plain meaning of the statutory language. If legislative intent is clear from the language, we enforce the statute "according to its terms without resorting to statutory construction." *Id.* Furthermore, we "presume that all language in a statute was drafted advisedly, and that the plain ordinary meaning of the language used was intended." *Committee to Save Bishop's House v. Medical Ctr. Hosp. of Vermont*, 137 Vt. 142, 153, 400 A.2d 1015, 1021 (1979) (citations omitted). We must not allow a significant part of a statute to be rendered surplusage or irrelevant. See *State v. Yorkey*, 163 Vt. 355, 358, 657 A.2d 1079, 1081 (1995).

As Blackstone recorded in 1771, the origin of larceny from the person can be traced to the Roman and Athenian legal systems, where "saccularii," or cutpurses, were punished more severely than ordinary thieves. 4 W. Blackstone, Commentaries 241 (4th ed. 1771). Following these ancient law traditions, the English *Statutes at Large* incorporated specifically enhanced penalties for similar acts. Blackstone, *supra*; see 8 Eliz. c. 4 § 2 (1565) (removing benefit of clergy for pickpurses and cut purses convicted of "felonious taking of any money, or goods, or chattels, from the person of any other, privily without his knowledge"). The penalties were more severe than larceny "owing to the ease with which such offenses are committed, and the difficulty in guarding against them." Blackstone, *supra*. Thus, the offense was a compound crime, made up of the simple theft, but aggravated by an invasion of one's person. *Id.* at 229.

In contrast to the private stealing done by pickpockets, Blackstone distinguished another form of larceny from the person: robbery. It is characterized by "open and violent assault" on a person where property is stolen through fear and an involuntary dispossession. *Id.* at

241. Under this form of larceny from the person, the property need only be in the presence of its owner and not literally attached to the owner's body. *Id.* at 242; see also 2 W. LaFave & A. Scott, Substantive Criminal Law § 8.11(c), at 442 n.28 (2d ed. 1986).

In Vermont, the first statute addressing larceny from the person was enacted in 1861. The wording of the statute is consistent with the common law understanding noted by Blackstone and appears to differ little from the traditional anti-pickpocketing statutes. Its original form stated that the crime occurred "[i]f any person shall feloniously steal *from the person of another*, any money, or other property." 1861, No. 19, § 1 (emphasis added). It provided for a severe sentence of up to ten years imprisonment and/or a fine not in excess of one thousand dollars.

In 1862, the larceny statutes were substantially revised. According to the General Statutes of Vermont, larceny applied to "[e]very person who shall commit the offence of larceny, by stealing, of the property of another, whether from his *actual or constructive possession*." 1862 G.S. ch. 113, § 10 (emphasis added). It appears that this enactment was meant to synthesize various larceny statutes including larceny, 1850 C.S. ch. 104, § 8, larceny from the person, 1861, No. 19, § 1, larceny of specific materials, 1864, No. 26, § 1, and larceny resulting from a trespass, 1865, No. 25, § 1.* Larceny from the person, as a specific crime, does not appear in the General Statutes. The revision does, however, include the separate crime of *attempt* of larceny from the person. This statute punishes "[e]very person who shall attempt to commit the offence of larceny by feloniously stealing from the person of another any money or other property, then *about his person and in his actual custody*." 1862 G.S. ch. 113, § 11 (emphasis added). Although only a crime of attempt, the additional language, on its face, indicates an expansion of the crime. In contrast to the phrase "from the person" (from the 1861 statute), the modifier "about his person and in his actual custody" refers to something more than physical attachment to the owner's body. It is reasonable to assume that the term "custody" refers to possession and control. Black's defines custody as "[t]he care and control of a thing or person for inspection, preservation, or security." Black's Law Dictionary 390 (7th ed. 1999).

In 1880, the language of the statute was changed again as a result of legislation to revise and update all of the statutes of Vermont. 1878,

---

* Although the volume General Statutes states that it contains the acts passed by the legislature in 1862, in fact, the volume was not published until 1877 and thus explains why the notations refer to session laws passed after 1862. See 1862 G.S. at 669.

No. 127. The crime of larceny from the person was reinstated, using language similar to that of the 1862 attempt crime. The language was condensed from "then about his person and in his actual custody" to the phrase "from the person *and custody of another*." 1880 R.L. § 3892 (emphasis added). Thus, despite reinstating the completed crime of larceny from the person from an attempt crime, there is no indication that the legislature was altering the nature of the crime itself. Indeed, according to the Commissioner's *Report upon the Revision of the Laws*, submitted to the Governor in 1880, the purpose of the change was to revise the statutes into "plain and simple language" with the "intent to preserve the *law* as far as possible, unchanged" and to remove phraseology that had become obsolete. C.W. Willard and W.G. Veazey, Commissioners, *Report upon the Revision of the Laws*, 15, 10 (1880) (emphasis in original).

Although there have been several general revisions to the statute since 1880, the express language of "from the person and custody of another" has remained consistent for over 120 years. "When changes in statutes come about only as a result of a revision, caution is required in determining whether or not any substantive change in the law was intended. The presumption is that there was no such intention, unless the contrary clearly appears." *Town of Cambridge v. Town of Underhill*, 124 Vt. 237, 240, 204 A.2d 155, 157 (1964) (interpreting a statutory revision in 1947 and holding that no substantive change was intended). The revisions have changed the language of the statute on occasion, but not its substantive reach. For example, a 1972 amendment omitted the phrase "in the state prison" from the penalty element of the statute. See 1971, No. 199 (Adj. Sess.), § 15. We have not found any contradictory evidence to indicate that a substantive alteration was intended and, therefore, rely on the language codified in 1880.

In Vermont, there have been few cases dealing with larceny from the person, and those cases have involved property taken directly from the person. See *State v. Ladabouche*, 127 Vt. 171, 172-73, 243 A.2d 769, 770-71 (1968) (theft of a wallet from the victim's body); *State v. Deso*, 110 Vt. 1, 6, 1 A.2d 710, 712 (1938) (explaining that "in the presence" satisfies the robbery statute but not addressing larceny from the person separately).

Courts in other jurisdictions have followed two major approaches to the issue raised by this case. The first approach has pursued a strict reading of the phrase "from the person." These jurisdictions have required that the stolen item is physically touching the victim at the

time of theft, harkening back to the origin of the statute to punish pickpockets. E.g., *People v. McElroy*, 48 P. 718, 719 (Cal. 1897); *Terral v. State*, 442 P.2d 465, 465 (Nev. 1968); *State v. Crowe*, 384 A.2d 340, 342-43 (Conn. 1977). Two cases show the stringency of this requirement. In *People v. Huggins*, 60 Cal. Rptr. 2d 177 (Ct. App. 1997), for example, the court affirmed the conviction of grand theft "from the person" where the victim's purse was stolen as it rested on the floor at her feet. The basis of the conviction was that her foot was in contact with the purse. The court held that the victim's purpose in keeping the purse against her foot was to retain "dominion and control" over the purse and guard against purse-snatchers. *Id.* at 179. Yet, in *People v. Williams*, 12 Cal. Rptr. 2d 243 (Ct. App. 1992), the court reversed a conviction of grand theft from the person where a victim's purse was taken from the car seat beside her. The court held that in spite of the fact that the thief reached into the car window to grab the purse, the statute did not extend to property that had been "laid aside" from the person. *Id.* at 246. The victim had hardly given up voluntary control of her purse, but the court held that actual physical contact was necessary. *Id.* at 247.

The other approach stems from jurisdictions that permit a broader reading of their statutes, holding that where property is taken from the presence or constructive control or possession of the owner, the statute is satisfied. See, e.g., *Commonwealth v. Subilosky*, 224 N.E.2d 197, 206 (Mass. 1967); *State v. Blow*, 334 A.2d 341, 343 (N.J. Super. Ct. App. Div. 1975). Courts have reasoned that there is a constructive trespass on the victim's person and that the heightened risk to the victim justifies an enhanced penalty. E.g., *Garland v. Commonwealth*, 446 S.E.2d 628, 630 (Va. Ct. App. 1994); see Annotation, *What Constitutes Larceny "From a Person"*, 74 A.L.R.3d 271 (1976). In *Garland*, for instance, the defendant frightened a cashier when he reached across to steal money from the cash drawer. 446 S.E.2d at 629. The cashier was not physically touching the cash drawer, but the thief's hands came within inches of hers in order to get the money. The court held that the money was within her immediate control and custody and the thief's conduct was "of an assaultive nature." *Id.* at 630. Therefore, the court affirmed defendant's from the person conviction, viewing the assault as a constructive trespass on the person. *Id.*

Similarly, the Supreme Court of Rhode Island held that assaultive conduct is sufficient to justify a conviction for larceny from the person, even though the statute does not expressly include the phrase "in his

presence." *State v. Shepard*, 726 A.2d 1138, 1141-42 (R.I. 1999). In *Shepard*, the defendant was convicted of larceny from the person, after crashing his car into the victim's car and threatening her. The defendant then "entered her vehicle without her permission, when she was still dazed from the accident and unable to retreat or withdraw" to demand compensation for the damage. *Id.* at 1141. He tried to grab the victim's wallet and cell phone, which were within her immediate presence. Relying in part on *Garland*, the court affirmed the conviction of larceny from the person. It concluded that the broader interpretation of from the person was more consonant with the statute's purpose: "to protect the dignity and sanctity of each person from a theft of property within that person's custody and control while that person is present physically." *Id.* at 1142.

■ We agree with the State that a broad reading of 13 V.S.A. § 2503 is appropriate. The statute provides for a severe punishment for thefts "from the person and custody of another." This language indicates a wider scope than simply from the person's physical body. Although the State argues that "from the person" may apply equally to items attached to and nearby the victim, we find that this is contrary to the common law understanding of the term. There would be no need for the legislature to include the phrase "and custody of another" if the prior phrase "from the person" could have two meanings. The State's construction would render a portion of the statute surplusage, which we decline to adopt. See *Yorkey*, 163 Vt. at 358, 657 A.2d at 1081. It would also be puzzling why the phrase "in his presence" augments the definition of assault and robbery when under the State's view "from the person" would have said as much. See 13 V.S.A. § 608. A better basis for a broad interpretation of § 2503 is that the modifier "and custody of another" indicates the legislature intended to protect an area or region distinct from the physical person of the victim. Thus, we find that "and custody of another" refers to the area immediately within one's control or presence, distinguishable from one's person. The statute, therefore, represents a departure from the narrow strictures of the common law, imposed by using "from the person," and by retaining the additional language of "and custody of another."

A broader reading of the statute creates a zone of protection around a person's body that warrants a higher penalty when a theft occurs within this zone. In this case, the central problem we confront is whether the zone was violated by defendant. We find that it was not, because defendant's conduct did not satisfy any of the factors traditionally used by other jurisdictions that have similarly interpreted

larceny from the person. We hold, therefore, that the evidence does not support the conviction.

As discussed above, courts that have followed the broad approach have considered a nexus of factors to determine whether larceny from the person has been committed. Although a formal test has not been articulated, these factors include whether the thief's conduct was "of an assaultive nature," e.g., *Shepard*, 726 A.2d at 1142, whether the victim was aware of the theft at the time it occurred because the stolen item was in the victim's immediate presence, e.g., *State v. Jones*, 499 S.W.2d 236, 240 (Mo. Ct. App. 1973), and whether the thief's actions posed a potential risk of violence and danger to the victim, e.g., *Blow*, 334 A.2d at 343.

■ Evaluating the facts of this case in light of these factors, the evidence does not rise to the level of larceny from the person. Defendant's conduct was not assaultive in nature. Defendant did not confront the victim in a threatening or violent manner. Rather, Nicholson invited defendant into the car when she stopped to pick him up hitchhiking. In the course of ordinary conversation, defendant revealed accurate and personal information that facilitated his arrest later that day. Defendant did not use force or threaten it when stealing the money; instead he snatched the money from Nicholson's purse as it lay in the back seat of the car while she was driving and making conversation. Nor was Nicholson aware of the theft at the time it occurred because the purse was in the back seat of the car. Nicholson discovered her purse had been opened only after defendant had left the car and she had reached her destination. Therefore, she could not have had a sense of fear or invasion at the time her money was stolen. Admittedly, there was a potential danger that Nicholson could have discovered the theft while driving and been distracted from operating her motor vehicle, thereby putting her in danger. Given the location of her purse in the back seat of the car and the congenial nature of Nicholson's interaction with defendant, however, this risk did not materialize. The facts of this case do not encroach on the extended zone of protection safeguarded by larceny from the person. Thus, we hold that defendant's conduct does not justify the heightened charge. The crime committed was petit larceny, 13 V.S.A. § 2502, because the purse was not under the direct protection of the owner and there was no forcible taking.

*Reversed.*

**Dooley, J.,** concurring. I join in the result and much of the reasoning of the majority. I would, however, interpret the statute in accordance

with its plain meaning, limiting its applicability to stealing property that is within the actual physical control of the victim. I find the factors used by the majority — whether the thief's conduct was assaultive, whether the victim was aware of the theft, and the risk of violence — to have little relevance to a determination of control. Indeed, it is difficult to discern any difference between the standard employed by the majority and that urged by the dissent. Both seem to look primarily at the risk of confrontation. The only difference is in how the standard applies to the facts of this case.

The wallet in this case was beyond the victim's actual physical control. I would hold that § 2503 does not apply whether defendant took the wallet surreptitiously or announced he was doing so.

**Morse, J.,** dissenting. Although I concur that larceny from the person does not require that the property stolen be physically touching the victim, I would affirm. Defendant entered a conditional plea of *guilty* following the trial court's ruling that larceny from the person did not require that the subject property be touching the victim when taken. We are affirming that view of the law. Defendant has pled guilty to it.

Even if defendant had not pled guilty and there had been a motion to dismiss for lack of a prima facie case under V.R.Cr.P. 12(d) (requiring State to establish by admissible evidence that it has substantial evidence as to the charged offense sufficient to withstand a motion for judgment of acquittal at trial), it would have been properly denied. See *State v. Dixon*, 169 Vt. 15, 17, 725 A.2d 920, 922 (1999) (when reviewing a motion to dismiss, evidence must be viewed in the light most favorable to the State, and modifying evidence is excluded from consideration). Whether the defendant in this case committed larceny from the person should be left to a jury to decide.

The determination whether the victim's zone of protection extended to the back seat of her car is a mixed question of fact and law. As the majority notes, it is the heightened *risk* to the victim created when the property at issue is taken from the victim's presence and control — within a few feet behind her on the back seat in this case — that merits the enhanced penalty associated with larceny from the person. 172 Vt. at 283, 775 A.2d at 924. That risk most certainly existed in this case, especially where the defendant and the victim were together in a car — a small, confined space, moving down the highway. There was a significant potential that the victim might discover defendant taking her money from her purse, resulting in a confrontation, fright and panic.

Because it is this very type of *risk* that has precipitated the heightened penalty associated with larceny from the person, see *State v. Washington*, 308 N.W.2d 422, 423 (Iowa 1981) ("theft from the victim's area of control, because of its *potential* for physical confrontation with the thief, could logically be seen as justifying an enhanced penalty") (emphasis added); *Garland v. Commonwealth*, 446 S.E.2d 628, 630 (Va. Ct. App. 1994) ("larceny from the person recognizes an enhanced societal concern for conduct that implicates *at least a potential* for personal assault") (emphasis added), I do not agree that, as a matter of law, the facts of this case could *never* be considered by a jury to constitute such a crime. If a violent confrontation or assault had actually occurred, then an even more serious crime would have been committed, meriting an even greater penalty. 13 V.S.A. § 608 (assault and robbery); see also *State v. Buckom*, 401 S.E.2d 362, 365 (N.C. 1991) (noting that larceny from the person differs from robbery because it "lacks the requirement that the victim be put in fear" and occupies a "middle ground" between robbery and traditional or petty larceny).

Furthermore, I agree with the concurrence to the extent that whether the victim knew of the theft and whether the nature of the thief's conduct was assaultive should not be legally controlling. Nevertheless, I do not think that we can assume that, because the victim's wallet was in the back seat of her car, it was out of her reach, i.e., out of her physical control. See *Washington*, 308 N.W.2d at 423 (in case where victim's billfold was taken from her purse which was located in a shopping cart, court held that "theft from the victim's area of control" was sufficient for conviction of larceny from the person); *Garland*, 466 S.E.2d at 630 (holding "larceny from the person embraces not only theft of property from physical contact with the victim, but also theft of property that is in the victim's possession and *within his immediate custody and control*") (emphasis added); see also *New York v. Belton*, 453 U.S. 454, 460 (1981) (holding that police may search the passenger compartment of a car incident to a lawful arrest under principle that a search of the area within the "immediate control of the arrestee" may occur and noting "articles inside the relatively narrow compass of the passenger compartment . . . are in fact generally, even if not inevitably, within 'the area into which an arrestee might reach in order to grab a weapon or evidentiary ite[m]' ") (quoting *Chimel v. California*, 395 U.S. 752, 763 (1969)) (alteration in original). These are facts that ought to be developed at trial and decided by a jury.

I respectfully dissent.