**Richmond**

WAYMAN JESSE GARLAND

v.

COMMONWEALTH OF VIRGINIA

No. 0852-93-2

Decided July 26, 1994

COUNSEL

Robert P. Geary, for appellant.

Marla Lynn Graff, Assistant Attorney General (Stephen D. Rosenthal, Attorney General, on brief), for appellee.

OPINION

**WILLIS, J.**—On appeal from his conviction of larceny from the person in violation of Code § 18.2-95, Wayman Jesse Garland contends that the evidence was insufficient to support his conviction. We disagree and affirm the judgment of the trial court.

On December 10, 1992, Charles Williams, manager of a Golden Skillet restaurant in Henrico County, noticed a vehicle without a rear license plate parked in his restaurant's parking lot. Fearing a possible robbery, Williams watched the customers and noticed Garland standing at a cash register. Garland stood there for "five minutes or so" without ordering.

Meanwhile, Angeline McDougal operated the cash register. As she opened the register to complete a sale, Garland reached over the countertop and took money out of the open cash drawer. While doing so, he stood within two feet, but reached to within inches, of Ms. McDougal, who stood just to the side of the cash register and across the countertop from Garland. He grabbed a handful of cash and ran from the restaurant. Ms. McDougal was frightened.

Police officers apprehended Garland a short distance from the restaurant. A search of his person revealed "a handful[ ] of various denominations of bills," totaling sixty to seventy dollars in his pants pocket.

Code § 18.2-95 provides, in pertinent part:

Any person who (1) Commits larceny from the person of another of money or other thing of value of $5 or more . . . shall be deemed guilty of grand larceny [punishable as a felony].

Code § 18.2-96 provides, in pertinent part:

Any person who:

\* \* \* \* \*

2. Commits simple larceny not from the person of another of goods and chattels of the value of less than $200 . . . shall be deemed guilty of petit larceny, which shall be punishable as a Class 1 misdemeanor.

On appeal, Garland contends that he committed only petit larceny, not larceny from the person. He argues that Code § 18.2-95 must be construed strictly, that "from the person" means from direct physical contact with the victim and is not satisfied by mere proximity of the stolen property to the victim. He argues, further, that larceny is based upon trespass, that larceny from the person requires commission of a trespass against the victim's person, and that he committed no trespass against the person of Ms. McDougal. We find these arguments unpersuasive.

■ In *Johnson v. Commonwealth*, 65 Va. (24 Gratt.) 555 (1873), the accused took money from the victim's hand. This was held to constitute larceny from the person. Numerous cases have held removal of property from the custody and control of the victim, albeit not from personal physical contact, sufficient to satisfy the theft requirement for robbery. However, robbery embraces the taking of the property of another, from his person *or in his presence. Crawford v. Commonwealth*, 217 Va. 595, 597, 231 S.E.2d 309, 310 (1977) (emphasis added). Virginia has not addressed heretofore whether the "from the person" requirement is satisfied other than by removal of the stolen property from direct physical contact with the victim. However, the majority of decisions from other jurisdictions have held that direct physical contact is not required. *See* James O. Pearson, Jr., Annotation, *What Constitutes Larceny "From A Person"*, 74 A.L.R.3d 271 (1976).

In *Commonwealth v. Subilosky*, 352 Mass. 153, 224 N.E.2d 197 (1967), the accused was charged with larceny from the person of Lombardi, acting manager of a bank, who was in the banking room when the theft occurred. The evidence showed that the stolen money was taken from cash drawers for which two other tellers were responsible. Upholding Subilosky's conviction for larceny from the person of Lombardi, the Supreme Judicial Court of Massachusetts said:

> The funds in the bank were under Lombardi's protection; hence the essential elements of the crime of larceny from the person have been shown.

*Id.* at 166, 224 N.E.2d at 206.

In *State v. Blow*, 132 N.J. Super. 487, 334 A.2d 341, *cert. denied*, 68 N.J. 152, 343 A.2d 440 (1975), the accused stole money

from under the driver's seat of a car being operated by the victim. Affirming Blow's conviction of larceny from the person, the Superior Court of New Jersey, Appellate Division, said:

The definition of "from the person" must, of necessity, limit the area within which larceny will be punished as a high misdemeanor. However, we do not agree that the Legislature intended the phrase "from the person" to mean from the physical person of the victim. Rather, we are of the view that to constitute larceny "from the person" it is sufficient if the property is taken while in his possession and immediate presence.

*Id.* at 490, 334 A.2d at 343.

In *In re Welfare of D.D.S.*, 396 N.W.2d 831 (Minn. 1986), the Supreme Court of Minnesota upheld a larceny from the person conviction based on theft of property "not actually on the person of another but only in the other's presence." The Court said:

At common law property was stolen "from the person" of another even if it was only "in the presence" of the person at the time it was stolen. . . . "Property is stolen 'from the person' if it was under the protection of the person . . . although not actually 'attached' to him. . . . As said by Coke in the 1600's: 'for that which is taken in his presence, is in law taken from his person.'"

*Id.* at 832.

*State v. Buckom*, 328 N.C. 313, 401 S.E.2d 362 (1991), involved a situation similar to the case before us. The defendant purchased some candy. When the store clerk opened the cash register to make change, the defendant reached into the cash drawer, took money, and fled the store. Affirming his conviction for larceny from the person, the Supreme Court of North Carolina said:

The General Assembly of North Carolina has declared that so much of the common law as has not been abrogated or repealed by statute or become obsolete is in full force and effect in this state.

At common law, "Larciny [sic] from the person is either by privately stealing; or by open and violent assault, which is usually called robbery." . . . At common law, larceny from the person differs from robbery in that larceny from the person lacks the requirement that the victim be put in fear. . . . Larceny from the person forms a middle ground in the common law between the "private" stealing most commonly associated with larceny, and the taking by force and violence commonly associated with robbery.

Taken in the context of the foregoing common law principles, "[p]roperty is stolen 'from the person,' if it was under the protection of the person at the time . . . . [P]roperty may be under the protection of the person although not actually 'attached' to him."

*Id*. at 316-18, 401 S.E.2d at 364-65 (citations omitted).

■ It is seen from the foregoing authorities that the concept of larceny from the person recognizes an enhanced societal concern for conduct that implicates at least a potential for personal assault, conduct that involves the person of the victim and jeopardizes his personal security. We find this concept to be sound. Thus, we hold that larceny from the person embraces not only theft of property from physical contact with the victim, but also theft of property that is in the victim's possession and within his immediate custody and control. *See* Roger D. Groot, *Criminal Offenses and Defenses in Virginia* 301 (3d ed. 1994).

Garland stole money from Ms. McDougal's possession. At the time of the theft, the money was in her immediate custody and control. Indeed, at the time of the theft, Ms. McDougal was in the process of handling the money. Garland's act frightened Ms. McDougal. Although Garland did not accomplish the theft through the agency of assault or intimidation, his conduct was nonetheless of an assaultive nature, such as to constitute a constructive trespass upon the person of Ms. McDougal. We hold that Garland's theft of the money under those circumstances constituted larceny from Ms. McDougal's person.

The judgment of the trial court is affirmed.

*Affirmed.*

Cole, S.J., concurred.

Benton, J., dissenting.

Larceny from the person was first distinguished from simple larceny in the sixteenth century, James O. Pearson, Jr., Annotation, *What Constitutes Larceny "From A Person,"* 74 A.L.R.3d 271, § 2[b] (1976), when by an act of the English Parliament, larceny from the person was "debarred of the benefit of clergy," 5 *Blackstone's Commentaries* 241 (St. George Tucker ed. 1803). In a footnote to Blackstone's discussion of larceny against the person and the English statute which first distinguished that offense from simple larceny, Tucker observed that that statute was "not in force in Virginia." *Id.* at 241 n.10. In that footnote, Tucker refers the reader to a footnote earlier in the volume which reads in pertinent part as follows:

All statutory offenses and penalties whatsoever, treated of in the [Blackstone] commentaries, as offenses, against the laws of England, are, therefore, to be regarded only as offenses in *that* kingdom, and, not as having any existence either in the Commonwealth of Virginia, or under the federal government, unless made such by the legislature of the Commonwealth, or of the United States.

*Id.* at 33 n.9. Therefore, to the extent that larceny from the person is a crime in Virginia, it is so by virtue of legislative statute and does not trace its roots to the common law. *See also* Pearson, *What Constitutes Larceny "From A Person"*, 74 A.L.R.3d at 274, § 1[a]. Simply put, larceny from the person is a statutory offense in Virginia.

Several well known principles of statutory construction govern our construction of Code § 18.2-95. "When the legislature has spoken plainly it is not the function of the courts to change or amend its enactments under the guise of construing them." *Winston v. City of Richmond*, 196 Va. 403, 407-08, 83 S.E.2d 728, 731 (1954). Courts may only construe statutes that are "wholly within the domain of ambiguity" because statutes that are "plain need no interpretation." *Id.* Moreover, to the extent that a penal statute requires construction, "it must be strictly construed against the state and limited in application to cases falling clearly within the language of the statute." *Turner v. Common-*

*wealth*, 226 Va. 456, 459, 309 S.E.2d 337, 338 (1983).

Code § 18.2-95 defines grand larceny, in relevant part, as the commission of "larceny from the person of another of money or other thing of value of $5 or more." Only by an act of judicial legislation may a court insert after the phrase, "larceny from the person," the phrase "or his presence." The majority justifies such a construction first on the ground that *robbery* includes "the taking of the property of another, [by force or intimidation] from his person or in his presence." That statement of the law of robbery, though accurate, compels a conclusion opposite that reached by the majority.

In describing the scope of the common law crime of robbery, the Virginia Supreme Court stated:

> In this State there is no statutory definition of robbery, although Code of 1950, § 18-163, [now Code § 18.2-58] in effect at the time of the alleged offense, fixes the punishment therefor. Hence, with us, the elements of robbery are the same as at common law. [We have] adopted the common-law definition of robbery as "the taking, with intent to steal, of the personal property of another, *from his person or in his presence*, against his will, by violence or intimidation."

*Pettus v. Peyton*, 207 Va. 906, 909-10, 153 S.E.2d 278, 280 (1967) (citations omitted) (emphasis added). *See also Pierce v. Commonwealth*, 205 Va. 528, 532, 138 S.E.2d 28, 30 (1964) (the notion of robbery is drawn from the common law, and encompasses larceny, by force or intimidation, "from the person or his presence"); *Butts v. Commonwealth*, 145 Va. 800, 811, 133 S.E. 764, 767 (1926) (robbery requires proof of, *inter alia*, a taking of property " 'from [the] person [of another] or in his presence' ") (quoting *Clark's Criminal Law* § 105, at 323 (2d ed. 1902)); 5 *Blackstone's Commentaries, supra*, at 241.

The import of the definition of robbery for purposes of construing Code § 18.2-95 is that, in the context of robbery, "from the person" and "from his presence" have different meanings. *See Smyth v. White*, 195 Va. 169, 172, 77 S.E.2d 454, 456 (1953) (violent taking was "from the person or at least in the presence of the victim"); *Person v. Commonwealth*, 10 Va. App. 36, 40, 389 S.E.2d 907, 910 (1990) (implying that "from his presence" and

"from his person" are distinct concepts). If "from his presence" contemplates removing property from the area within a person's dominion or control, *see Brookman v. Commonwealth*, 151 Va. 522, 526, 145 S.E. 358, 360 (1928) (where defendant took cash drawer from victim who was lying on floor pretending to be dead, theft was from the victim's presence), then "from the person" necessarily contemplates removing property that actually touches or is attached to the person. Our courts have not construed the phrase "from his person" to mean "from his person or his presence." Indeed, I can conceive of no reason why the phrase "from the person," as that term is used in the context of robbery, should have a different meaning when used by the legislature to describe the statutory crime of larceny from the person.

Significantly, the sixteenth century statute which first distinguished simple larceny from larceny from the person required that the property be actually stolen from the victim's person, and not simply from his presence:

> [Larceny from the person] was not otherwise regarded or punished by the common law than as simple larceny until the Statute of 8 Elizabeth (ch. 4), which vastly increased the punishment but did not alter the nature of the felony. Under this statute it was held, as it is under some statutes in this country, that there must be an actual taking from the person — a taking from his presence is not sufficient as it is in robbery.

50 Am. Jur. 2d *Larceny* § 48 (1970) (footnotes omitted). *See also Terral v. State*, 442 P.2d 465, 465-66 (Nev. 1968) (in the sixteenth century English law, larceny from the person required more than mere theft from the presence of a person; "the statutory words 'from the person' mean precisely that"). Indeed, other jurisdictions which characterize their robbery offense as larceny, by force or intimidation, "from the person or his immediate presence" have construed "from the person" to require that the stolen personalty be actually attached to or touching the victim. *See, e.g., State v. Lucero*, 498 P.2d 350, 351 (Utah 1972); *People v. McElroy*, 48 P. 718, 719 (Cal. 1897).

The majority relies on the opinions of courts of several states which interpret those states' own "larceny from the person" statutes and which rely upon their own case precedent. The majority

quotes at length from a recent opinion of the North Carolina Supreme Court which involved a fact situation similar to this case. The North Carolina court concluded that larceny from the person may involve property not "actually 'attached' to [the person]." *State v. Buckom*, 401 S.E.2d 362, 365 (N.C. 1991). As the majority notes, that conclusion turned on the North Carolina court's perception that a distinction should be drawn between " 'private' stealing most commonly associated with larceny, and the taking by force and violence commonly associated with robbery." *Id.* at 365.

Our own Supreme Court, however, in the course of discussing the propriety of a conviction for larceny from the person, long ago rejected the notion of distinguishing robbery and larceny on such a basis. In *Johnson v. Commonwealth*, 65 Va. (24 Gratt.) 555, 556-57 (1873), the victim was standing "upon [a] street . . . and was holding some money . . . in his open hand, and was counting it, and [the defendant] came by and took the money out of his hand and walked off."

The only error in the judgment assigned in the petition for a writ of error is, that, by the laws of Virginia, the offence of which the prisoner stands convicted cannot be considered larceny from the person. "For in this State" (she proceeds to say in her petition) "that offence is divided into two classes, viz: 'privately stealing,' and 'open and violent assault, commonly called robbery.' And your petitioner is advised that the statute under which she was indicted was not designed for such cases as the one of which she was convicted, but for cases of those commonly known as 'pickpockets,' who properly come under the first class mentioned, *i.e.*, 'privately stealing.' "

There is no such offence known to the law of Virginia as "private" stealing, from the person of another or otherwise. The law makes no distinction between private and public stealing, except that robbery must, of necessity, be committed publicly. But it is not pretended that the offence in this case was robbery, and therefore nothing further need be said here as to the nature of that crime.

*Id.* at 557.[1]

The holding of *Johnson* is still the law in Virginia. Because neither the disapproved distinction between "private" and "public" stealing nor the common law definition of robbery compels a construction of the statutory term "from the person," I would give that phrase its plain meaning. I would hold, therefore, that in order for a conviction to lie for "larceny from the person," the theft must be actually, not constructively, from the victim's person. Since Garland stole sixty to seventy dollars from the cash drawer near where the victim stood, but not from the victim's person, the evidence proved only Garland's guilt of petit larceny. Code § 18.2-96.

Fundamental to our jurisprudence is the principle that the legislature may, within our state and federal constitutional scheme, choose to prescribe guidelines for offenses as it sees fit. Thus, with respect to larceny, the legislature has the power to "entirely abolish such distinctions" as there may be between degrees of offenses. *Bell v. Commonwealth*, 167 Va. 526, 533, 189 S.E. 441, 444 (1937). The legislature, however, has not done so. Equally fundamental is the principle that this Court lacks the authority to enlarge the scope of a statute such as Code § 18.2-95, which has a clear meaning, "regardless of what [this Court might] think of its wisdom or policy." *Temple v. City of Petersburg*, 182 Va. 418, 423, 29 S.E.2d 357, 358 (1944). Because the majority interprets Code § 18.2-95 to permit a conviction for larceny from the person if the evidence proves that property was taken from the victim's mere "presence," I dissent.

---

[1] Blackstone was of the view that the English offense of larceny from the person was indeed an attempt to prevent "*privately* stealing from a man's *person*, as by picking his pocket or the like, privily without his knowledge." 5 *Blackstone's Commentaries, supra*, at 241. That the Virginia Supreme Court has construed Virginia's statute to bar more than covert theft from the person is further evidence that larceny from the person is not a common law crime in Virginia, but one that finds its roots in the criminal code.