PUBLISHED

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
           *Plaintiff-Appellee,*

v.                              No. 03-4032

TYRONE SMITH, JR.,
           *Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Virginia, at Richmond.
Robert E. Payne, District Judge.
(CR-02-70)

Argued: October 31, 2003

Decided: March 2, 2004

Before WILKINS, Chief Judge, and KING and
GREGORY, Circuit Judges.

---

Affirmed by published opinion. Chief Judge Wilkins wrote the opinion, in which Judge King and Judge Gregory joined.

---

## COUNSEL

**ARGUED:** Mary Elizabeth Maguire, Assistant Federal Public Defender, Richmond, Virginia, for Appellant. Olivia N. Hawkins, Assistant United States Attorney, Richmond, Virginia, for Appellee. **ON BRIEF:** Frank W. Dunham, Jr., Federal Public Defender, Richmond, Virginia, for Appellant. Paul J. McNulty, United States Attorney, Richmond, Virginia, for Appellee.

**OPINION**

WILKINS, Chief Judge:

Tyrone Smith, Jr. pleaded guilty to one count of distributing heroin. He now appeals the sentence imposed by the district court, arguing that his prior Virginia conviction for larceny from the person should not have been counted as a predicate offense for purposes of applying the career offender guideline, *see United States Sentencing Guidelines Manual* § 4B1.1 (2002). We affirm.

I.

On November 14, 2001, Smith sold quantities of heroin totaling .07 gram to two undercover officers in Richmond, Virginia. He was subsequently charged with distributing heroin, *see* 21 U.S.C.A. § 841(b)(1)(C) (West Supp. 2003), and pleaded guilty without a plea agreement.

The presentence report (PSR) recommended application of the career offender guideline because Smith was at least 18 years old at the time of the offense of conviction (he was 42); the offense of conviction was a felony controlled substance offense; and Smith had previously been convicted of two felonies that were either controlled substance offenses or crimes of violence. *See* U.S.S.G. § 4B1.1(a). As the predicate offenses, the PSR identified two state convictions: a 2000 conviction for possession of heroin with the intent to distribute, and a 1987 conviction for larceny from the person.

Application of the career offender guideline increased Smith's offense level from 10 to 29, *see id.* § 4B1.1(b)(D), but did not affect Smith's Criminal History Category, which was VI even without application of the career offender guideline. Smith's offense level of 29 and his Criminal History Category of VI resulted in a guideline range of 151-188 months; absent the higher offense level required by the career offender guideline, Smith's guideline range would have been 24-30 months.

At sentencing, Smith objected to the use of the 1987 conviction as a predicate offense, arguing that larceny from the person is not a

crime of violence. The district court rejected this argument and sentenced Smith to 151 months imprisonment. Smith now appeals.

## II.

The guidelines provide that a defendant must be sentenced as a career offender

> if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

U.S.S.G. § 4B1.1(a). Smith does not dispute that he was at least 18 years old when he committed the instant offense and that the offense of conviction is a felony controlled substance offense. Rather, he argues that the district court erred in determining that his 1987 conviction for larceny from the person is a "crime of violence" within the meaning of the guideline. This is a legal question subject to de novo review. *See United States v. Dickerson*, 77 F.3d 774, 775 (4th Cir. 1996).

"Crime of violence" is defined by the guidelines as

> any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that —
>
> (1)  has as an element the use, attempted use, or threatened use of physical force against the person of another, or
>
> (2)  is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

U.S.S.G. § 4B1.2(a). Larceny from the person is not one of the offenses enumerated in § 4B1.2(a)(2), nor does it contain as an ele-

ment the use, attempted use, or threatened use of physical force, *see* Va. Code Ann. § 18.2-95 (Michie Supp. 2003); *Graves v. Commonwealth*, 462 S.E.2d 902, 903 (Va. Ct. App. 1995), *adopted on rehearing en banc*, 468 S.E.2d 710 (Va. Ct. App. 1996). Therefore, larceny from the person is a crime of violence only if it "otherwise involves conduct that presents a serious potential risk of physical injury to another." U.S.S.G. § 4B1.2(a)(2).

The relevant commentary prohibits "a wideranging inquiry into the specific circumstances surrounding a conviction" in determining whether an offense is a crime of violence. *United States v. Johnson*, 953 F.2d 110, 113 (4th Cir. 1991) (stating that the commentary to U.S.S.G. § 4B1.2 makes clear that "a sentencing court must confine its factual inquiry to those facts charged in the indictment"). Consistent with this limitation, we have stated that

> in assessing whether a particular offense satisfies the "otherwise clause" of [U.S.S.G. § 4B1.2(a)(2)], a sentencing court must confine its factual inquiry to those facts charged in the indictment. If the sentencing court cannot glean the circumstances surrounding the defendant's commission of the crime from the indictment, the question for the sentencing court becomes whether that crime, in the abstract, involves conduct that presents a serious potential risk of physical injury to another.

*Dickerson*, 77 F.3d at 776 (internal quotation marks & citations omitted). Thus, determining whether an offense is a crime of violence under the "otherwise" clause involves a two-part inquiry. First, we must consider the indictment pertaining to the offense of which the defendant was convicted. If that effort is unavailing, we must then consider whether the offense of conviction is a crime of violence in the abstract. "[M]ost, if not all, instances of an offense should involve a serious potential risk of injury in order for that offense to constitute a crime of violence in the abstract." *United States v. Martin*, 215 F.3d 470, 475 (4th Cir. 2000).

Here, the indictment—which initially charged Smith with robbery, but which was amended to charge larceny from the person—does not provide any of the circumstances surrounding the commission of the

offense. Accordingly, it is necessary to consider whether larceny from the person under Virginia law, considered in the abstract, is a crime of violence.[1]

The Fourth Circuit has not yet addressed this question. However, virtually all of our sister circuits have concluded that larceny from the person and similar offenses are crimes of violence. *See, e.g.*, *United States v. Howze*, 343 F.3d 919, 923-24 (7th Cir. 2003);[2] *United States v. Griffith*, 301 F.3d 880, 885 (8th Cir. 2002), *cert. denied*, 537 U.S. 1225 (2003); *United States v. Payne*, 163 F.3d 371, 374-75 (6th Cir. 1998); *United States v. Hawkins*, 69 F.3d 11, 13 (5th Cir. 1995); *United States v. De Jesus*, 984 F.2d 21, 23-25 (1st Cir. 1993). And, in *United States v. Mobley*, 40 F.3d 688 (4th Cir. 1994), we held that pickpocketing under District of Columbia law is a crime of violence. *See Mobley*, 40 F.3d at 695-96. We reasoned that because the statute required that property be taken "from the person or immediate actual possession of another," there is always the potential for an ordinary pickpocketing to "progress into something far uglier." *Id.* at 696 (internal quotation marks omitted).

In light of these authorities, we hold that larceny from the person is a crime of violence. Under Virginia law, a theft is larceny from the person if property is taken either from the victim's physical possession or from "his immediate custody and control." *Garland v. Commonwealth*, 446 S.E.2d 628, 630 (Va. Ct. App. 1994). The offense "recognizes an enhanced societal concern for conduct that implicates at least a potential for personal assault, conduct that involves the person of the victim and jeopardizes his personal security." *Id.* In *Payne*,

---

[1]Smith alleges that because the indictment was amended by crossing out the word "rob" and replacing it with "commit larceny from the person," the state court determined that no force or violence was involved in the crime. Even if this were true—although the record contains no evidence concerning the circumstances of the amendment—it would not help Smith. While the amendment of the indictment may indicate the absence of violence, the question here is whether the offense in general involves a *risk* of violence.

[2]*Howze* overruled *United States v. Lee*, 22 F.3d 736, 740-41 (7th Cir. 1994) (holding that theft from the person is not a crime of violence), on which Smith relies. *See Howze*, 343 F.3d at 924.

the Sixth Circuit held that larceny from the person under Michigan law—which also requires that property be taken from the person or immediate presence of the victim—was a crime of violence, reasoning that "[t]his is clearly the type of situation that could result in violence. Any person falling victim to a crime involving such an invasion of personal space would likely resist or defend in a manner that could lead to immediate violence." *Payne*, 163 F.3d at 375. Similarly, in *Mobley* we reasoned that the District of Columbia pickpocketing statute, requiring a taking from the person or immediate presence of the victim, was a crime of violence. *See Mobley*, 40 F.3d at 696.

In arguing that larceny from the person is not a crime of violence, Smith relies heavily on *Martin*, in which we held that bank larceny is not a crime of violence. We reached that conclusion after noting that "[a]lthough some bank larcenies may present a risk of physical confrontation, bank larceny may be committed by numerous means that present no such risk"—including obtaining money by false pretenses, forging a certified check, or using one's position as a bank employee to take money from a teller drawer. *Martin*, 215 F.3d at 475; *see id.* ("The vast array of means of committing bank larceny that pose no potential risk of physical injury to another, let alone a serious one, precludes a determination that the offense in the abstract is a crime of violence.").

*Martin* is not controlling. The key difference between the bank larceny statute at issue in *Martin* and the offense of larceny from the person is that the latter offense must be committed in the immediate presence of the victim. In contrast, bank larceny can be committed in ways that do not involve any human contact—such as using an automated teller machine to deposit a forged check and withdraw the proceeds. Additionally, in most instances of larceny from the person the victim knows or is likely to discover that the offense is happening *as it occurs*, raising a significant possibility of resistance. In contrast, some forms of bank larceny—such as obtaining money by false pretenses—are unlikely to be discovered until the perpetrator has left the scene. In short, larceny from the person presents a potential risk of injury that simply does not inhere in bank larceny.

### III.

For the reasons set forth above, we conclude that larceny from the person is a crime of violence in the abstract. We therefore affirm the sentence imposed by the district court.

*AFFIRMED*