STATE OF NORTH CAROLINA v. LAMONT DARRELL CARTER

No. COA06-1645

(Filed 2 October 2007)

1. **Robbery— common law—motion to dismiss—sufficiency of evidence—taking property by violence or putting victim in fear—larceny from person**

The trial court erred by denying defendant's motion to dismiss the charge of common law robbery, and the case is remanded for a conviction and sentencing on larceny from the person, because: (1) while there was a battery when the victim was sprayed with pepper spray on the back of the head, it did not induce the victim to part with the money nor did the force instill the necessary fear; (2) the State's argument that the victim's lack of resistance proved that he was put in fear was unconvincing

when the victim's own testimony was that he was instructed not to give chase in the event of a robbery; (3) the record showed no evidence that the money was taken from the victim by the use of violence or putting him in fear; and (4) there was sufficient evidence of larceny from the person when the victim had the money close at hand and was in the middle of replenishing an ATM when the money was removed from his possession.

**2. Evidence— prior crimes or bad acts—threats—sending threatening letters—authentication—failure to show prejudice**

The trial court did not err in a common law robbery and conspiracy to commit common law robbery case by allowing defendant's alleged coconspirator to testify that defendant and another person had sent him threats, and to read to the jury three threatening letters that he testified he had received while in prison, because: (1) regardless of whether these pieces of evidence were in fact inadmissible, defendant cannot show that without them a different result would likely have been reached; and (2) defendant only argues that the letters are highly prejudicial since the handwriting was not authenticated, which is in fact an argument as to why they are hearsay instead of why they are prejudicial.

**3. Constitutional Law— effective assistance of counsel—failure to object—failure to show different result would have been reached**

Defendant did not receive ineffective assistance of counsel in a common law robbery and conspiracy to commit common law robbery case based on his trial counsel's failure to object to the mention of his alleged coconspirator having taken a polygraph test, because: (1) defendant failed to object to these statements at trial, and thus review is under the plain error standard; (2) the fact that counsel made an error, even an unreasonable one, does not warrant reversal of a conviction unless there is a reasonable probability that, but for counsel's errors, there would have been a different result in the proceedings; and (3) given the very slight nature of these pieces of evidence, defendant cannot show that without them a different result would have been reached.

Appeal by defendant from judgments entered 11 May 2006 by Judge James M. Webb in Guilford County Superior Court. Heard in the Court of Appeals 28 August 2007.

*Attorney General Roy A. Cooper, III, by Special Deputy Attorney General Dorothy Powers, for the State.*

*Crumpler, Freedman, Parker, & Witt, by Vincent F. Rabil, for defendant-appellant.*

HUNTER, Judge.

Lamont Darrell Carter ("defendant") appeals from the trial court's entry of judgments based on jury verdicts of guilty of common law robbery and conspiracy to commit common law robbery. After careful review, we vacate the conviction for common law robbery and remand for resentencing on a charge of larceny from the person.

On 20 May 2004, Sean Rowlett ("Rowlett") and Marvin Cooks ("Cooks"), as Express Teller Services employees, went to Alamance Church Road in Greensboro to replenish an ATM. The ATM was located in an atrium just inside a Bi-Lo grocery store. Upon their arrival at the store, Rowlett exited the truck carrying a canvas bag inside which was a plastic bag containing $103,000.00 in cash, which he then placed in a grocery cart. He entered the store, approached the ATM, and began the replenishment process, placing the grocery cart with the cash to his left.

Rowlett was "about to insert [his] settlement card" into the ATM to balance the machine when he felt a spray hit the back of his head. Rowlett testified that he "thought it was like a little kid with a water gun[.]" When he touched the back of his head and looked at his hand, however, he discovered that the spray was orange, and the back of his head began to "burn"; he believed it might have been pepper spray or mace. Rowlett then turned to his left, toward where the shopping cart had been, and discovered that the bag containing the money was gone. He looked out the door and saw someone running away with the sack wearing what appeared to be the same uniform he and his partner were wearing. Rowlett had been instructed not to chase after anyone, and so he remained at the store and called the police. Defendant was later apprehended by Greensboro police and charged with both common law robbery and conspiracy to commit common law robbery, the latter based on evidence that defendant and Cooks, Rowlett's driver, acted in concert to commit the crime.

Cooks testified against defendant at trial. During his testimony, Cooks read to the jury three anonymous threatening letters that he stated he received in jail, testified that he had been threatened, and stated that he had passed a polygraph test regarding these events.

STATE v. CARTER

[186 N.C. App. 259 (2007)]

On 11 May 2006, defendant was convicted by a jury of common law robbery and conspiracy to commit common law robbery, then pled guilty to being an habitual felon. He was sentenced in the presumptive range to 90 to 117 months on the first count and 90 to 117 months on the second count, to run at the expiration of the first sentence. Defendant appeals his conviction for common law robbery.[1]

I.

**[1]** "When ruling on a motion to dismiss, the trial court must determine whether the prosecution has presented 'substantial evidence of each essential element of the crime.' " *State v. Smith*, 357 N.C. 604, 615, 588 S.E.2d 453, 461 (2003) (quoting *State v. Call*, 349 N.C. 382, 417, 508 S.E.2d 496, 518 (1998), *cert. denied*, 534 U.S. 1046, 151 L. Ed. 2d 548 (2001)). " 'Substantial evidence' is relevant evidence that a reasonable person might accept as adequate, or would consider necessary to support a particular conclusion[.]" *State v. Garcia*, 358 N.C. 382, 412, 597 S.E.2d 724, 746 (2004) (internal citation omitted). " 'The reviewing court considers all evidence in the light most favorable to the State, and the State receives the benefit of every reasonable inference supported by that evidence. Evidentiary "[c]ontradictions and discrepancies are for the jury to resolve and do not warrant dismissal." ' " *State v. McNeil*, 359 N.C. 800, 804, 617 S.E.2d 271, 274 (2005) (quoting *Garcia*, 358 N.C. at 412-13, 597 S.E.2d at 746) (alteration in original).

Common law robbery "is the felonious taking of money or goods of any value from the person of another, or in his presence, against his will, by violence or putting him in fear." *State v. Stewart*, 255 N.C. 571, 572, 122 S.E.2d 355, 356 (1961). "It is not necessary to prove both violence and putting in fear—proof of *either* is sufficient." *State v. Moore*, 279 N.C. 455, 458, 183 S.E.2d 546, 547 (1971).

The primary element in dispute here is the final one: Taking the property "by violence or putting [the victim] in fear." *Stewart*, 255 N.C. at 572, 122 S.E.2d at 356.

Generally the element of force in the offense of robbery may be actual or constructive. Although actual force implies personal violence, the degree of force used is immaterial, *so long as it is sufficient to compel the victim to part with his property or*

---

1. We note that, while defendant assigned error to various aspects of his conviction for conspiracy to commit common law robbery, he made no arguments as to that conviction to this Court, and as such we deem these assignments of error abandoned. *See* N.C.R. App. P 28(a).

*property in his possession.* On the other hand, under constructive force are included "all demonstrations of force, menaces, and other means by which the person robbed is put in fear sufficient to suspend the free exercise of his will or prevent resistance to the taking . . . [.] No matter how slight the cause creating the fear may be or by what other circumstances the taking may be accomplished, if the transaction is attended with such circumstances of terror, such [as] threatening by word or gesture, as in common experience are likely to create an apprehension of danger and *induce a man to part with his property for the sake of his person,* the victim is put in fear."

*State v. Sawyer,* 224 N.C. 61, 65, 29 S.E.2d 34, 37 (1944) (quoting 46 Am. Jur. 146) (emphasis added).

The key distinction here is that, while there clearly was a battery, it did not induce Rowlett to part with the money. The facts as evidenced from Rowlett's own testimony was that he was sprayed with an unidentifiable substance, felt the back of his head to see what it was, and then turned around to find defendant already running out the door with the money. Certainly, spraying someone with pepper spray, even on the back of the head, is a use of force, but in this instance that force did not instill the fear necessary such that defendant's obtaining the money could be considered common law robbery.

The State argues to this Court that the above-quoted language means that any time a person's "resistance to the taking" of property is "prevent[ed]," constructive force—and therefore a common law robbery—has occurred. This meaning only appears when the phrase is taken out of context. The full sentence states: "under constructive force are included 'all demonstrations of force, menaces, and other means by which the person robbed is put in fear sufficient to [1] suspend the free exercise of his will *or* [2] prevent resistance to the taking[.]" *Id.* (emphasis added). That is, the person must not only be prevented from resisting; that prevention must be accomplished by putting the person in fear. The State's argument that Rowlett's lack of resistance proves that he was put in fear is unconvincing, particularly considering Rowlett's own testimony that he was instructed not to give chase in the event of a robbery.

Although we must take the facts in the light most favorable to the State here, the record shows no evidence that the money was taken from Rowlett by the use of violence or putting him in fear. However, the remaining elements of common law robbery—that defendant

took money from the person of another, or in his presence, against his will—together constitute the crime of larceny from the person.

As our Supreme Court has stated, "larceny from the person differs from robbery in that larceny from the person lacks the requirement that the victim be put in fear." *State v. Buckom*, 328 N.C. 313, 317, 401 S.E.2d 362, 365 (1991). Defendant also argues to this Court that, because the money involved was in a cart to Rowlett's side, it was not taken from his person or presence as required for a conviction of common law robbery. The requirement for the crime of larceny from the person is slightly different, so we consider defendant's argument on this point here.

For the crime of larceny from the person, the property must be taken " 'from one's presence and control[,]' " which our Supreme Court has stated means "the property stolen must be in the immediate presence of and under the protection or control of the victim at the time the property is taken." *State v. Barnes*, 345 N.C. 146, 149, 478 S.E.2d 188, 190 (1996) (emphasis omitted) (quoting *Buckom*, 328 N.C. at 317-18, 401 S.E.2d at 365). As this explanation suggests, our courts' holdings as to when larceny from the person has been committed have concentrated on the physical proximity of the victim to the property when it was taken. *See Buckom*, 328 N.C. at 318, 401 S.E.2d at 365 (defendant's taking money from cash register when cashier was standing in front of register making change constituted larceny from the person); *State v. Wilson*, 154 N.C. App. 686, 689-91, 573 S.E.2d 193, 195-97 (2002) (same); *State v. Pickard*, 143 N.C. App. 485, 491, 547 S.E.2d 102, 106-07 (2001) (finding evidence that defendant snatched victim's purse off her arm while standing behind her sufficient to support conviction for larceny from the person); *Barnes*, 345 N.C. at 148-50, 478 S.E.2d at 189-90 (where employee in charge of bank bag left it under cash register and was in kiosk twenty-five feet away, bag was no longer in his presence or control for purposes of larceny from the person); *State v. Lee*, 88 N.C. App. 478, 478-79, 363 S.E.2d 656, 656 (1988) (theft of purse not larceny from the person where purse was left in grocery cart and stolen while owner walked away for four or five minutes).

In the case at hand, Rowlett had the money close at hand and was in the middle of the replenishment transaction with the ATM when the money was removed from his possession. Further, although the money does not appear from the record to have been in Rowlett's line of sight, as we noted in *Barnes*, "if a man carrying a heavy suitcase sets it down for a moment to rest, and remains right there to guard it,

the suitcase remains under the protection of his person." *Barnes*, 345 N.C. at 148, 478 S.E.2d at 190 (quoting Rollin M. Perkins & Ronald N. Boyce, *Criminal Law* 342-43 (3d ed. 1982)).

Thus, we find substantial evidence was presented for all the elements of larceny from the person, and as such remand this case for sentencing on that basis.

## II.

**[2]** At trial, Cooks, defendant's alleged co-conspirator, was allowed to testify that defendant and another person had "sent [him] threats" and to read to the jury three threatening letters that he testified he had received while in prison. Defendant argues that both pieces of testimony were improperly admitted; specifically, that Cooks's testimony as to threats he received was unduly prejudicial, and that the letters were not properly authenticated before being read to the jury. Both of these arguments are without merit.

We first note that defendant has the burden to show not only that the evidence was admitted in error, but also that the error was prejudicial. That is, a defendant must show that, but for the error, a different result would likely have been reached. *State v. Freeman*, 313 N.C. 539, 548, 330 S.E.2d 465, 473 (1985).

Cooks's statement regarding the threats came in the context of his testimony about defendant and another person coming to his house to urge him to commit certain crimes with them. Cooks stated: "[H]e—they sent threats, and they said that I needed to help them or, you know, something was going to happen to me if I didn't." He also testified that he "didn't want to participate[,]" but the pair "kept pushing and urging." Defendant argues that this testimony exaggerated his propensity for violence, and thus "its probative value is substantially outweighed by the danger of unfair prejudice" and so should have been excluded. N.C. Gen. Stat. § 8C-1, Rule 403 (2005).

The letters Cooks was allowed to read to the jury urged him not to testify and explained at length how, if Cooks did not testify against his co-conspirators, he would not serve any further jail time. Only one of the three was signed; it stated it was from "Two Guns," which Cooks stated he understood to mean defendant, having heard defendant refer to himself that way in the past. Defendant argues that, because the trial court allowed the letters to be read without authenticating their handwriting, they were hearsay and thus inadmissible.

Regardless of whether these pieces of evidence were in fact inadmissible, however, defendant cannot show that without them a different result would likely have been reached. As to the testimony regarding the threats, the statements specified in defendant's assignments of error (quoted above) are just two sentences of Cooks's testimony as to defendant's threatening behavior, the whole of which covers several pages of the record. The removal of these two sentences would have no discernable effect on the thrust of Cooks's testimony as to defendant's threats. As to the letters, defendant only argues that they are highly prejudicial because the handwriting was not authenticated, which is in fact an argument as to why they are *hearsay*, not why they are *prejudicial*.

Defendant cannot show why the exclusion of this evidence would have led to a different result at trial, and as such, this assignment of error is overruled.

## III.

[3] Finally, defendant argues that his counsel's failure to object to the mention of Cooks's having taken a polygraph test constituted ineffective assistance of counsel. This argument is without merit.

The fact that Cooks had taken a polygraph test came up three times during the trial: Twice during Cooks's own testimony, and once during the testimony of Detective Jackie Taylor of the Raleigh Police Department. Defense counsel did not object at any of these times. When Cooks read the above-mentioned letters to the jury, one letter contained the following statement: "I fully explained to him how the police threatened you with a murder charge if you didn't tell them what they wanted to hear, even though you passed a polygraph test." Next, during defense counsel's cross-examination of Cooks, she asked: "Did you tell the police officers that you had to go about four weeks ago and take a polygraph?" This was repeated twice after the State objected and the court overruled it before Cooks answered; he then answered "[y]es" and defense counsel moved on to what else Cooks had told the police. Finally, during Detective Taylor's testimony, defense counsel read aloud a portion of the detective's report summarizing what Cooks had told them: "I had to go about four weeks ago and take a polygraph at the police department."

Defense counsel's failure to object to these statements at trial means that this Court reviews defendant's arguments under a plain error standard. *See State v. Mitchell*, 328 N.C. 705, 711, 403 S.E.2d 287, 290 (1991). However, "[t]he fact that counsel made an error, even an

unreasonable error, does not warrant reversal of a conviction unless there is a reasonable probability that, but for counsel's errors, there would have been a different result in the proceedings." *State v. Braswell*, 312 N.C. 553, 563, 324 S.E.2d 241, 248 (1985). Again, given the very slight nature of these pieces of evidence, defendant cannot show that without them a different result would have been reached. As such, this assignment of error is overruled.

We find no prejudicial error resulted from the admission of the letters, testimony of threats, or evidence of Cooks's polygraph test. However, because the State did not present evidence of all the elements of common law robbery but did present evidence of all the elements of larceny from the person, we vacate the verdict on common law robbery and remand to the trial court for resentencing based on a charge of larceny from the person.

Vacated and remanded.

Judges WYNN and BRYANT concur.