PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

        *Plaintiff-Appellee,*

v.

JERRED MONDEE JARMON,

        *Defendant-Appellant.*

No. 08-4624

Appeal from the United States District Court
for the Middle District of North Carolina, at Durham.
James A. Beaty, Jr., Chief District Judge.
(1:07-cr-00268-JAB-1)

Argued: January 29, 2010

Decided: February 26, 2010

Before MOTZ, GREGORY, and DAVIS, Circuit Judges.

Affirmed by published opinion. Judge Motz wrote the opinion, in which Judge Gregory and Judge Davis joined.

## COUNSEL

**ARGUED**: Thomas Norman Cochran, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Greensboro, North Carolina, for Appellant. Michael A. DeFranco, OFFICE OF THE UNITED STATES ATTORNEY, Greensboro, North Caro-

lina, for Appellee. **ON BRIEF:** Anna Mills Wagoner, United States Attorney, Greensboro, North Carolina, for Appellee.

---

**OPINION**

DIANA GRIBBON MOTZ, Circuit Judge:

Jerred Mondee Jarmon pled guilty to being a felon in possession of a firearm. Jarmon challenges only his sentence on appeal. He argues that the district court erred in counting his prior North Carolina conviction for larceny from the person as a "crime of violence" under the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines"). We affirm.

I.

On May 5, 2007, police officers in Durham, North Carolina, responding to a citizen's tip that she had observed a young man with a gun, approached Jarmon and two others. As the officers approached, Jarmon attempted to flee. The officers detained him and noticed a handgun protruding from his pocket. Further investigation revealed that the pistol had been stolen from a police officer and had traveled in interstate commerce.

A federal grand jury returned a one-count indictment charging Jarmon with possession of a firearm by a felon, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2) (2006). Jarmon's predicate felony was a 2002 North Carolina conviction for larceny from the person.

Jarmon pled guilty to being a felon in possession. At his sentencing hearing, Jarmon objected to the district court's determination that his 2002 conviction constituted a crime of violence for sentencing purposes. The district court overruled the objection and sentenced Jarmon to 40 months in prison

and three years of supervised release. Jarmon timely noted this appeal.

## II.

The Guidelines state that a sentencing court shall assign a felon in possession of a firearm a base offense level of 20 if "the defendant committed any part of the instant offense subsequent to sustaining one felony conviction of . . . a crime of violence." U.S.S.G. § 2K2.1(a)(4)(A). A "crime of violence" is any offense punishable by more than one year in prison, that

> (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or

> (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or *otherwise involves conduct that presents a serious potential risk of physical injury to another*.

U.S.S.G. § 4B1.2(a) (2009) (emphasis added). We review *de novo* the district court's interpretation of these provisions. *See United States v. Pierce*, 278 F.3d 282, 286 (4th Cir. 2002).

To obtain a larceny conviction in North Carolina, the prosecution must prove that the defendant "(1) took the property of another; (2) carried it away; (3) without the owner's consent, and (4) with the intent to deprive the owner of the property permanently." *State v. Rawlinson*, 679 S.E.2d 878, 882 (N.C. Ct. App. 2009) (internal quotation marks omitted). Larceny from the person requires proof of an additional element: "'the property stolen must be in the immediate presence of and under the protection or control of the victim at the time the property is taken.'" *State v. Carter*, 650 S.E.2d 650, 654 (N.C. Ct. App. 2007) (quoting *State v. Barnes*, 478 S.E.2d 188, 190 (N.C. 1996)).

Accordingly, "larceny from the person" does not include as one of its elements the threatened, attempted, or actual use of physical force; nor does the Guideline list this crime as a crime of violence. Therefore, neither § 4B1.2(a)(1) nor the first clause of § 4B1.2(a)(2) applies here. Rather, to constitute a crime of violence, larceny from the person must qualify under the "otherwise" clause of § 4B1.2(a)(2), i.e., it must "otherwise involve[ ] conduct that presents a serious potential risk of physical injury to another." *Id.*

Jarmon acknowledges that six years ago, in *United States v. Smith*, 359 F.3d 662 (4th Cir. 2004), we held that larceny from the person constitutes a crime of violence for sentencing purposes because it presents a risk of violent confrontation, and therefore a serious risk of physical injury. *Id.* at 665-66. Jarmon argues, however, that the Supreme Court's recent decision in *Begay v. United States*, 128 S. Ct. 1581 (2008), effectively overruled *Smith*.

In *Begay*, the Supreme Court held that conviction under a state statute prohibiting driving under the influence of alcohol was not a "violent felony" under the Armed Career Criminal Act ("ACCA").*See id.* at 1588. The Court reasoned that Congress included the enumerated offenses of burglary, arson, extortion, and the use of explosives to "limit[ ] the crimes that [the second] clause . . . covers to crimes that are roughly similar, in kind as well as in degree of risk posed, to the examples themselves." *Id.* at 1585. The Court found that the enumerated felonies "typically involve purposeful, 'violent,' and 'aggressive' conduct," *id.* at 1586, and thus distinguished those crimes from offenses, like driving under the influence of alco-

---

*The ACCA defines "violent felony" in a manner substantively identical to the definition of a "crime of violence" in § 4B1.2. *Compare* 18 U.S.C. § 924(e)(2)(B) (2006) *with* U.S.S.G. § 4B1.2. We have therefore held that precedents evaluating the ACCA apply with equal force to U.S.S.G. § 4B1.2. *See, e.g.*, *United States v. Seay*, 553 F.3d 732, 739 (4th Cir. 2009).

hol, that "impose strict liability, criminalizing conduct in respect to which the offender need not have had any criminal intent at all," *id.* at 1586-87.

*Begay* thus requires a sentencing court, in determining whether an offense falls under the "otherwise" clause, to engage in a different analysis than that followed in *Smith*. The *Begay* Court held that the sentencing court must "decide whether, as a categorical matter," the prior offense "is 'roughly similar, in kind as well as in degree of risk posed[,]' to the enumerated offenses." *United States v. White*, 571 F.3d 365, 370 (4th Cir. 2009) (quoting *Begay*, 128 S. Ct. at 1585). To assess whether the prior offense is similar "in kind" to the enumerated offenses, "we must . . . determine whether the statute at issue involves purposeful, violent, and aggressive conduct, such that the offense can be found similar to the enumerated crimes." *United States v. Roseboro*, 551 F.3d 226, 234 (4th Cir. 2009). To determine whether a prior offense presents the same "degree of risk" as an enumerated offense, we examine whether "the prior crime, like the enumerated offenses, creates an 'immediate, serious, and foreseeable physical risk[ ] that arise[s] concurrently with the commission of the crime[ ]' itself." *White*, 571 F.3d at 370 (quoting *United States v. Thornton*, 554 F.3d 443, 449 (4th Cir. 2009)) (alterations in original).

III.

Jarmon contends that our holding in *Smith* cannot stand after *Begay* because larceny from the person does not involve purposeful, violent, and aggressive conduct. Jarmon argues that this must be true because the addition of "violence" to a larceny-from-the-person offense would transform that offense into a robbery.

Jarmon's arguments fail. Of course, violence is not an element of larceny from the person; if it were, U.S.S.G. § 4B1.2(a)(*1*) would apply. The relevant question under the

"otherwise" clause in U.S.S.G. § 4B1.2(a)(*2*), which applies here, is not whether the offense involves as much violence as robbery, but whether it typically involves the type of purposeful, violent, and aggressive conduct that would support an inference that this offender would be more dangerous with a gun. *See Begay*, 128 S. Ct. at 1587.

We conclude that larceny from the person typically involves such conduct. The crime is purposeful because it is not a "strict liability" crime devoid of criminal intent. *See id.* And while larceny from the person entails *less violence* than robbery, that fact does not prove that larceny from the person is *nonviolent*. Indeed, Jarmon acknowledges that larceny from the person can involve violence because it encompasses forceful takings like the snatching of a purse from a shoulder. *See State v. Robertson*, 531 S.E.2d 490, 493 (N.C. Ct. App. 2000). The act of snatching a purse (or any other property) from the victim's person may not inflict severe pain or injury, but it may do so, and in any event it is certainly aggressive. A defendant willing to confront his victims so directly is likely more dangerous with a gun than a defendant whose only prior crime is a strict liability offense like drunk driving. *See Begay*, 128 S. Ct. at 1588.

Jarmon next contends that offenders typically accomplish larceny from the person by stealth, not aggression. But this argument applies with equal force to the enumerated offense of burglary. Indeed, courts considering this question after *Begay* have found larceny from the person similar to burglary, as both crimes "raise[ ] the possibility of a violent confrontation between the victim and perpetrator or someone who witnesses the offense." *See, e.g.*, *United States v. Thrower*, 584 F.3d 70, 74 (2d Cir. 2009) (holding that larceny from the person is "surely purposeful" and "is as inherently violent and aggressive as burglary").

Nevertheless, Jarmon asserts that the comparison to burglary is "illusory" for two reasons. First, he maintains that

burglary entails more violence than larceny from the person because, unlike larceny from the person, burglary requires the offender to violate the sanctity of the victim's home, while the victim is present, with intent to commit a felony therein. Second, Jarmon contends that burglary requires breaking and entering, and thus destruction of property, which larceny from the person does not.

These arguments rest on a faulty premise. Jarmon compares larceny from the person with the *North Carolina* offense of first degree burglary. But the Supreme Court has expressly rejected the contention that the meaning of burglary "depend[s] on the definition adopted by the State of conviction." *Taylor v. United States*, 495 U.S. 575, 590 (1990). The Court has held instead that to ensure uniformity in sentencing, federal courts should give burglary a "generic" meaning encompassing "any crime, regardless of its exact definition or label, having the basic elements of unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime." *Id.* at 599. This definition of burglary, which we use today, does not require that the dwelling be occupied or property destroyed.

Comparing generic burglary with larceny from the person compels us to reaffirm our conclusion in *Smith*. Burglary does not necessarily involve violence, but it always requires that the offender intentionally enter a building where a victim might be present. This purposeful, aggressive act creates a serious risk of violent confrontation. Similarly, larceny from the person does not necessarily involve violence, but it requires the offender to make purposeful, aggressive moves to part the victim from his or her property, creating a similar risk of violent confrontation. In fact, because larceny from the person requires that the offender take the property from the protection or control of the victim, the victim's presence is assured, and the odds of a violent confrontation are even higher than in a generic burglary, where the victim is often absent.

We therefore hold that larceny from the person resembles the enumerated offense of burglary both in kind and in degree of risk, and so constitutes a "crime of violence" under the "otherwise" clause of § 4B1.2 of the United States Sentencing Guidelines.

## IV.

The district court reached the proper conclusion. Its judgment is

*AFFIRMED*.