# SUPREME COURT OF THE UNITED STATES

MATTHEW SHERIDAN DERBY

10–8373          *v.*

UNITED STATES

ON PETITION FOR WRIT OF CERTIORARI TO THE UNITED
STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

KEITH JOHNSON

10–8607          *v.*

UNITED STATES

ON PETITION FOR WRIT OF CERTIORARI TO THE UNITED
STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

ROY L. SCHMIDT

10–8768          *v.*

UNITED STATES

ON PETITION FOR WRIT OF CERTIORARI TO THE UNITED
STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

SHERMAN ALAN TURNER

10–8885          *v.*

UNITED STATES

ON PETITION FOR WRIT OF CERTIORARI TO THE UNITED
STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

Nos. 10–8373, 10–8607, 10–8768 and 10–8885.   Decided June 27, 2011

The petitions for writs of certiorari are denied.

JUSTICE SOTOMAYOR took no part in the consideration
or decision of No. 10–8607.

JUSTICE SCALIA, dissenting from denial of certiorari.

Before us are petitions for certiorari by criminal defendants asking us to decide whether four more of the "vast variety of . . . criminal offenses" that we have not yet addressed, see *Sykes* v. *United States*, *ante*, at 2–4, 7 (SCALIA, J., dissenting), are crimes of violence under the residual provision of the Armed Career Criminal Act (ACCA). See 18 U. S. C. §924(e)(2)(B)(ii). They are:

- *Derby* v. *United States*, No. 10–8373. Relying on its decision in *United States* v. *Mayer*, 560 F. 3d 948 (2009), the Ninth Circuit held that Oregon's first-degree burglary statute, Ore. Rev. Stat. §164.225 (2009), falls within ACCA's residual provision. In *Mayer*, the Ninth Circuit conceded that Oregon's statute does not qualify as the enumerated offense of generic "burglary" under ACCA because it applies to unlawful entries into "booths, vehicles, boats, and aircraft," 560 F. 3d, at 959, and not just buildings and structures. See *Taylor* v. *United States*, 495 U. S. 575, 598 (1990). Nevertheless, it held that Oregon's statute falls within the residual provision, because burglaries under that statute lead to a "risk of a physical confrontation." 560 F. 3d, at 962; but see *id.,* at 952 (Kozinski, C. J., dissenting from denial of rehearing en banc) (noting that "Oregon prosecutes as burglars people who pose *no* risk of injury to anyone," such as an individual who "enter[ed] public telephone booths to steal change from coin boxes").

- *Johnson* v. *United States*, No. 10–8607. The Second Circuit, over a dissent, held that the Connecticut offense of "rioting at a correctional institution," Conn. Gen. Stat. §53a–179b(a) (2011), which punishes a defendant who "incites, instigates, organizes, connives at, causes, aids, abets, assists or takes part in any disorder, disturbance, strike, riot

or other organized disobedience of the rules and regulations of [a correctional] institution," falls within ACCA's residual provision. In response to the defendant's argument that the statute punishes activities such as "'inciting or participating in a hunger strike'" or "'refusal to work at a prison job,'" the court reasoned that even "hypothetical acts of 'passive disobedience' . . . involve deliberate and purposeful conduct." 616 F. 3d 85, 90 (2010). It also held that such activities were risky because "prisons are like powder kegs, where even the slightest disturbance can have explosive consequences." *Id.,* at 94.

- *Schmidt* v. *United States*, No. 10–8768. The Fifth Circuit held that the federal offense of theft of a firearm from a licensed dealer, 18 U. S. C. §922(u), falls within ACCA's residual provision. It held that this offense is "inherently dangerous" because it involves "stealing from a person who probably either possesses or has easy access to firearms," and because "stolen firearms are more likely to be used in connection with illegal and inherently harmful activities than are lawfully possessed guns." 623 F. 3d 257, 264 (CA5 2010).

- *Turner* v. *United States*, No. 10–8885. Relying on its decision in *United States* v. *Jarmon*, 596 F. 3d 228 (2010), the Fourth Circuit held that ACCA's residual provision covers the Virginia offense of larceny from the person, Va. Code Ann. §18.2–95(i) (Lexis 2009), defined as theft of over $5 in money or goods from another person—in other words, pick-pocketing. In *Jarmon*, the court justified its apparent view that Oliver Twist was a violent felon by noting that larceny "requires the offender to make purposeful, aggressive moves to part the victim from his or her property, creating a . . . risk of vio-

lent confrontation" similar to the risk of violent confrontation during burglaries. 596 F. 3d, at 232.

How we would resolve these cases if we granted certiorari would be a fine subject for a law-office betting pool. No one knows for sure. Certainly our most recent decision interpreting ACCA's residual clause, *Sykes* v. *United States, ante,* p. 1, would be of no help. The "rule" we announced there, as far as I can tell, is as follows: A court must compare the degree of risk of the crime in question with the degree of risk of ACCA's enumerated offenses (burglary, extortion, arson, and crimes involving the use of explosives) as a "beginning point," *ante,* at 6–7; look at the statistical record, which is not "dispositive" but sometimes confirms "commonsense conclusion[s]," *ante,* at 8; and check whether the crime is "purposeful, violent, and aggressive," unless of course the crime is among the unspecified "many cases" in which that test is "redundant with the inquiry into risk," *ante,* at 11. And of course given our track record of adding a new animal to our bestiary of ACCA residual-clause standards in each of the four successive cases we have thus far decided, see *ante,* at 2–4 (SCALIA, J., dissenting), who knows what new beasties our fifth, sixth, seventh, and eighth tries would produce? Surely a perfectly fair wager.

If it is uncertain how this Court will apply *Sykes* and the rest of our ACCA cases going forward, it is even more uncertain how our lower-court colleagues will deal with them. Conceivably, they will simply throw the opinions into the air in frustration, and give free rein to their own feelings as to what offenses should be considered crimes of violence—which, to tell the truth, seems to be what we have done. (Before throwing the opinions into the air, however, they should check whether littering—or littering in a purposeful, violent, and aggressive fashion—is a felony in their jurisdiction. If so, it may be a violent felony under ACCA; or perhaps not.)

SCALIA, J., dissenting

Since our ACCA cases are incomprehensible to judges, the statute obviously does not give "person[s] of ordinary intelligence fair notice" of its reach. *United States* v. *Batchelder*, 442 U. S. 114, 123 (1979) (internal quotation marks omitted). I would grant certiorari, declare ACCA's residual provision to be unconstitutionally vague, and ring down the curtain on the ACCA farce playing in federal courts throughout the Nation.